Russell G. Hunt, J.
These claims arise out of an accident on August 2, 1954, at about 12:15 a.m., when the motorcycle which the intestate was operating, and, upon which his wife was riding as a passenger, overturned due to the alleged defective condition of the incompleted reconstruction of the WaterfordMeehanicville State Highway, also known as Route No. 32, in the Town of Waterford, Saratoga County.
The State Department of Public Works undertook the work of resurfacing the concrete pavement with two and one-half inches of blacktop from the north boundary of the Village of Waterford on the south to Mechanicville on the north, a distance of two and one-half miles; also, the widening of the highway; *476 constructing ramps from the resurfaced highway to adjacent driveways, and, rebuilding the shoulders. The work was started on May 19,1954, and was performed without prepared plans by two regularly employed highway light maintenance crews. On June 13 one of the crews was moved off the project and on June 18 the resurfacing was completed. The remaining crew thereafter made an addition on the east side of the highway. The additional width of blacktop was three feet at the driveway leading easterly into premises known as the Miller apartment house and this width extended south for about 600 feet along the east side of the highway and for an additional. 400 feet southerly the width was two feet. Along the two and one-half miles of the resurfaced highway the State constructed a number of ramps to connect with driveways. A ramp was built, as a part of the work, to connect with the driveway into the apartment house. This work was completed before July 1,1954. The shoulder work was not done by the crew which constructed the addition to the pavement. On July 1 the foreman in charge, Leonard, was transferred from the job and there was no foreman on the job until the foreman of the first crew was returned to the project on August 8 to build up the shoulders to meet the new pavement of the highway; in the meantime, other work was being performed by workmen on the job.
At the junction of the pavement and the ramp to the apartment house driveway there had existed from before July 1 a six and one-half inch drop-off, or depression, which extended southerly along the edge of the pavement for 16 feet, gradually sloping to a one-inch difference in elevation. This was at the place where the east side of the new pavement joined the south side of the newly constructed ramp on the shoulder of the road. On August 2, the intestate’s motorcycle, proceeding north on the east side of the highway, ran into this depression and he received fatal injuries and he died on September 17,1954; while the intestate was almost wholly unconscious, there was evidence that he experienced pain and suffering. His wife sustained injuries for which she seeks damages. (There is no relationship between the intestate or his wife and the owners of the apartment house.)
The evidence was that before the work commenced signs were placed at each end of the project. Each sign was about four feet wide and eight feet long and was entitled “Danger ” and bore the information that the State Department of Public Works was engaged in road construction work and that traffic was being maintained. Two ‘ ‘ bomb ’ ’ type flares were placed in front of *477 each sign every night. The sign at the south end of the job was about one-half mile south of Miller’s apartment house and there were no other signs, flares or other warnings in the intervening distance and there were none at the depression in front of the apartment house.
The testimony was that the intestate and his wife left their home about 9:30 p.m. on Sunday, August 1, on the motorcycle and rode to the nearby home of Mr. and Mrs. Edward J. Snay, their riding companions. The group then rode to the Veterans’ Club in Lansingburgh which was on the easterly side of the Hudson River and several miles away. The party remained a short time and while there drank beer, but, the record does not disclose how much beer was consumed. Upon leaving the Veterans’ Club, the party returned to Cohoes and went to Stanley’s Restaurant and Grill and arrived there about 10:30 p.m. At the latter place the party danced and drank beer; again, the record discloses only that a “ few beers ” were consumed and one witness testified the deceased drank only one glass of beer in his presence. They remained at Stanley’s for about an hour with the exception that the intestate was absent for about 15 minutes while he demonstrated his motorcycle to a friend. This was the extent of the testimony concerning the consumption of alcoholic beverages and the State does not otherwise contend in its brief or requests to find. The intestate had a familiarity with motorcycles by reason of ownership over a period of many years.
The group left Stanley’s at about 11:45 p.m., for a ride through the country and while proceeding northerly along Route No. 32, between Waterford and the apartment house, their speed was between 30 and 35 miles an hour. Upon approaching the apartment house, the highway curved to the west on a slight descending grade, and, at that place the headlights of an approaching car shone upon the intestate and Mrs. Miller, who were in the lead. The intestate slowed the cycle and veered it to the right and the front wheel went into the drop-off. He and his wife were thrown violently to the ground.
The State created a dangerous condition at the place of the accident and permitted it to exist unguarded and unmarked for over 30 days while at the same time exposing traffic thereto. The foreman in charge, Leonard, testified he knew the condition existed before he left the job on July 1; to him “ * the possibility of an accident was clear ’ ” (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339, 344), but, he did nothing about it, although “ the orbit of the danger as disclosed to the eye of reasonable vigilance *478 would be the orbit ” (p. 343) of his duty. The sign which had been erected one-half mile to the south was inadequate to warn of the hazard so created (Petrozak v. State of New York, 69 N. Y. S. 2d 809, 813). Diligence and proper construction practice required that the State should have protected traffic by posting adequate warning signs, or, if necessary, by closing the highway until it could be made reasonably safe for the traveling public (Battistoni v. State of New York, 1 A D 2d 926). In the absence of a warning that the highway or its shoulders were unsafe, the intestate had the right to assume that the same were reasonably safe and to use the shoulder in the emergency facing him and for the purpose for which he attempted to use the same (Wager v. State of New York, 257 App. Div. 580; La Rue v. Tiernan, 260 App. Div. 337; Brown v. State of New York, 308 N. Y. 980; Sletten v. State of New York, 282 App. Div. 751; Schill v. State of New York, 258 App. Div. 769; Taylor v. State of New York, 288 N. Y. 542; Graf v. State of New York, 287 N. Y. 594; Cook v. State of New York, 301 N. Y. 780). The State was negligent and its negligence was the actual or proximate cause of the accident. It was not contributory negligence for the intestate to fail to stop when approached by a vehicle having glaring headlights (Shaffer v. State of New York, 256 App. Div. 1053). The intestate and his wife were not guilty of negligence.
Judgments against the State are directed in accordance with findings of fact and conclusions of law filed herewith.