■ CLARA HUTCHINS, as Administratrix of the Estate of RICHARD M. HUTCHINS, Deceased, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 42169.) — HERLIHY, J. Both the claimant and the State appeal from a judgment of the Court of Claims awarding damages to the administratrix of the decedent. The trial court found that Fisher, the driver of one automobile, was incapable of operating his automobile in a wholly prudent manner and that, due to the quantity of beer he consumed prior to the accident, his judgment was impaired. It further found Fisher guilty of negligence, which was the proximate cause of the death of the decedent. The accident happened when the Fisher automobile went to the wrong side of the highway and collided with the automobile operated by the decedent, represented in the present action by his administratrix. The decedent was traveling in a northerly direction on New York Route 12B in the County of Madison and Fisher was traveling south. At the place of the accident the State was in the process of resurfacing the road bed with black top and along the westerly edge thereof was a drop found by the court to be more than six inches from the surface of the new pavement to what was referred to as the shoulder of the road. The passenger riding in the Fisher automobile testified that the lights of the approaching car appearing at the crest of an upgrade were bright and that Fisher pulled his automobile over to the right edge of the highway; that the right front wheel dropped approximately six inches and, in attempting to bring the automobile back onto the resurfaced highway, the driver lost control thereof and the automobile proceeded to the wrong side of the road and struck the automobile operated by the decedent. The trial court apparently predicated its finding of negligence on the part of the State as follows: "In and of itself, the existence of this drop-off indicates negligence on the part of the State.", and further stated "The State must maintain the shoulders of a highway in a reasonably safe condition for travel when necessity for their use arises. The State did not use reasonable care and was negligent." The claim is premised on the legal theory of improper repair and construction of the road and while there is testimony in the record concerning the nature and type of warnings at or near the place of the accident, the trial court failed to make any finding as to whether or not the State gave reasonable notice of the dangerous condition created by the "drop-off" and this finding is essential to a predicate of negligence on the part of the State. (*Miller* v. *State, of New York*, 6 A D 2d 979.) Judgment reversed, on the law and the facts, and a new trial ordered, without costs. Gibson, P. J., Staley, Jr., and Brink, JJ., concur with Herlihy, J.; Reynolds, J., concurs in a separate memorandum: The trial court has made a completely untenable finding of negligence on the part of the State on the theory that if during the reconstruction of a highway and shoulders, there is temporarily a low shoulder (that is an unevenness or drop-off between the highway which has been raised by the application of new black top and the shoulder which has not been completed) that "*In and of itself, the existence of*

*this drop-off indicates negligence on the part of the State."* (Emphasis added.) The court then cites *Miller* v. *State of New York* (13 Misc 2d 475, affd. 6 A D 2d 979). Of course, *Miller* did not hold that. *Miller* was based on entirely different facts. In *Miller* we had a completed highway and shoulders with a depression 16 feet long left at one spot approaching a driveway ramp. This depression had existed for 30 days after the completion of both the highway and shoulder reconstruction and was marked only by a sign at either end of the project warning that the road repairs were in process. There being admittedly no other signs or warnings of any nature at any other place, we affirmed a finding by the trial court of inadequate warning. In the instant case there are no findings whatsoever by the trial court as to the failure of the State to give reasonable notice of the existing condition at the construction area, undoubtedly because such a finding would be, in my view, against the weight of the evidence. The State's foreman testified that there were delineators, reflectorized poles, every 200 feet just previous to and along any uncompleted shoulder; that he had travelled the highway on the afternoon before the accident, which occurred about 10 o'clock in the evening, and had seen them there at that time; and that there was a delineator standing 100 feet north of the accident which Fisher passed just before the crash. This very delineator, in fact, was present in one of the photographs to the satisfaction of the trial court. Even the claimant's expert admitted "That's true; delineator or any other obstruction marker would serve to warn the public." Admittedly, large well-illuminated construction signs, one indicating *"Danger-Construction-Proceed with care"* and the other bearing the legend *"low shoulders"*, were at each end of the project at the time of the accident. This is undisputed and these signs are shown in the photographic exhibits. Moreover, a trooper sworn by the claimant testified that coming from the north (the same direction as Fisher, the driver found by the court to be incapable of driving due to drinking) he definitely had seen pot flares along the highway after leaving Hamilton. He testified: "a couple of times on my way down there, in that mile and a half, I can remember coming over a hill and seeing these lights and I thought that was the accident scene, and when I arrived there, they were these warning flares, the pot flare." As against this definite evidence is merely negative or "I don't remember" or "I didn't see any" testimony, offered by the passenger in the Fisher car who had been Fisher's drinking companion, and the speeding photographer who was not even aware that the road was under construction, and had negotiated it safely that same night in the same direction at high speed (50 miles in 50 minutes).