■ RICHARD SEBASTIANO, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 64371.)—Levine, J. Appeal from a judgment of the Court of Claims (Murray, J.), entered April 10, 1984, which dismissed the claim.

On June 13, 1980, claimant, an inmate at Clinton Correctional Facility, was confined to his cell under "keep lock" status, pending transfer to another correctional facility. The evidence established, and the Court of Claims so found, that it was customary to keep lock a prisoner about to be transferred because of the danger that another inmate, having a grudge against him, would be likely to commit some harmful act before the opportunity to do so was lost by the transfer. Claimant's cell in the facility was located in upper block F. That cell block consisted of three floors, each of which was divided into rows or galleries of cells, called "companies". Claimant's cell was located in company 10 on the highest of the three floors. Security was maintained through an office located at the entrance to the block on the lowest level, guard cages at each succeeding level from which the locks on individual cells in the companies were electronically controlled, and by locked gates at the entrance to each company.

According to claimant, he was reading in his cell at about 4:00 P.M. after having finished his dinner meal about 20 to 30 minutes earlier when an unknown person approached the cell and splashed him with a gasoline-smelling liquid. An instant later, the entire cell burst into flames and he was severely

burned before the fire was extinguished by guards and other inmates. Claimant brought the instant action against the State for negligently failing to prevent the attack. After trial, the Court of Claims dismissed the claim. This appeal ensued.

It is uncontested that at the time claimant was set on fire, the gates to his and the remaining companies of cells in the block were opened, having been unlocked at about 3:20 P.M. so that all inmates confined to their cells at the time could be served their dinners. This task was being accomplished by a group of seven "feeders", i.e., inmates selected and assigned the duty of bringing food trays to and then removing them from prisoners who were either restricted from eating in the facility's mess hall or who wished to eat in their cells. It was also uncontested that the food tray delivery and removal process for claimant's company had been completed for some 20 or 30 minutes when the incident occurred.

In addition to his own testimony, claimant introduced depositions of two inmates who had occupied nearby cells, of one of the "feeder" prisoners that afternoon, and of one of the two correction officers then on duty in upper block F. Both of the inmates described seeing a person unknown to them wearing an inmates' prison uniform pass their cells in the direction of claimant's cell and then quickly run back in the opposite direction off the tier as the fire erupted. One of these witnesses (inmate William Christ) further testified that he observed the intruder to be carrying a can of liquid on initially passing his cell and that he heard the sound of a splash and claimant cursing just before the "woosh" of the fire's ignition. The feeder inmate and the guard (Correction Officer Michael Gallagher) testified that the customary procedure at feeding was for an officer to accompany the feeder in the delivery and removal of food trays in each gallery and then to lock the gate before going to another floor to repeat the process.

The State called two witnesses in opposition to claimant's case. The first of these was the other guard on duty (Correction Officer David King). He testified that after reporting to the cell block for duty at 3:20 P.M., he immediately began escorting the team of feeders to the three floors, starting at the topmost level, and unlocked the gates to the companies at all levels. As he went from floor to floor with the feeders, he polled the prisoners in the cells as to whether they wished to be released to the yard for recreation and then dinner in the mess hall. He then returned to the office at the lowest level of the cell block to check on whether any of the inmates on the yard list he had just compiled were under restriction. While

making this check, he had a cup of coffee in the office on the first floor with Officer Gallagher. While thus engaged, he saw the feeder inmates near the office "hanging around cleaning up their trays and stuff". Throughout this period, the gates to all companies remained open. It was his intention, after checking the yard list, to return to the upper companies, release the inmates desirous and authorized to go to the yard, and then close and lock the gates. Before doing so, however, the fire broke out in claimant's cell. The other State's witness was the Deputy Superintendent of the facility in charge of security during the relevant period. It was his testimony that leaving all of the gates open in the entire cell block during feeding was an acceptable procedure to feed all companies at the same time. He further testified that, with proper security, a man could not enter a cell company with a can of fluid, pour it on a prisoner and walk out.

Claimant's evidence, if believed, presented sufficient facts upon which liability in negligence could have been imposed. In its operation of the correctional system, the State has a duty to provide inmates with reasonable protection against foreseeable risks of attack by other prisoners (*Wilson v State of New York,* 36 AD2d 559). Additionally, there was evidence which could support recovery on a theory of assumption of a special duty on behalf of claimant to protect him from attack on the eve of his transfer. Having segregated claimant from potential attackers and, presumably, them from him, the facility had, in actuality, left claimant in a more vulnerable position than that which he would have been in had his freedom of movement not been restricted (*De Long v County of Erie,* 60 NY2d 296, 305-306).

In its decision dismissing the claim, the Court of Claims failed adequately to address these potential grounds for recovery or to resolve the questions of fact underlying them. The court made a finding that the procedures employed to feed inmates in their cells at the time of the fire was reasonable under the circumstances. To support this, the court cited circumstances not based on evidence in the record that, since most of the inmates were not in the cells at the time, only a skeleton force of guards was available to supervise the feeding. The court failed to settle the apparent conflict between the testimony of the Deputy Superintendent and that of Correction Officer Gallagher and the feeder inmate as to whether the customary procedure was violated in keeping all gates open until the feeding of inmates on all three floors of the cell block had been completed. Moreover, the decision

never dealt with evidence of a further delay in locking the gates after the end of feeding, during which the fire occurred.

The only other reasons advanced by the Court of Claims for dismissing the claim was its rejection of the accounts of claimant and inmate Christ that an unknown inmate came onto the cell tier and set the fire. The court's disbelief of their versions was based on (1) the Deputy Superintendent's statement that no one could have thus penetrated the cell block if proper security had been enforced, and (2) a purported conflict in the narrations by claimant and inmate Christ. Neither of these factual grounds for rejecting claimant's version can reasonably be viewed as supporting the court's conclusion. The Deputy Superintendent was not present when the incident occurred and disclaimed any intimate knowledge of the details of the facility's in-house investigation. He was unable to offer any other explanation as to how claimant was set on fire. Indeed, the uncontested facts tend to negate any such alternative version of the events. All of claimant's personal possessions, including any potentially inflammatory materials, had already been removed from his cell in preparation for his transfer. Moreover, the cells on his tier were all locked, preventing an attack by any occupant of a cell within the gates securing company 10. Likewise, a comparison of the testimony of claimant and of inmate Christ shows nothing more than a minor discrepancy in their stories, patently insufficient as a basis for the total rejection of their position that the fire was set by an outsider.

On the basis of the foregoing, a reversal is required because the Court of Claims failed in its decision to apply the controlling principles of liability to the evidence and because the court's findings of ultimate fact were not reasonably inferable from the evidence (*see, Hutchins v State of New York*, 27 AD2d 623). Since it appears that there is potentially available evidence which could more fully develop the underlying facts of this occurrence, we exercise our discretion to direct a retrial rather than merely to remit to the Court of Claims for new findings or for this court to make independent findings and render a final judgment (*cf. Brooks v State of New York*, 68 AD2d 943, 944; *see also, D'Angelo v State of New York*, 41 AD2d 77, 81, *appeal dismissed in part* 32 NY2d 896, *mod* 34 NY2d 641).

Judgment reversed, on the law, with costs, and matter remitted to the Court of Claims for a new trial. Kane, J. P., Main, Casey, Yesawich, Jr., and Levine, JJ., concur.