Graffeo, J.
(dissenting). Because we think an inmate must establish that the State had actual or constructive notice of an unreasonable risk of an attack before the inmate may sue the State for injuries sustained in an assault by another inmate in a correctional facility, and no such evidence was submitted in this case, we respectfully dissent and would grant the State’s motion for summary judgment.
At the time of the incident in question, claimant Francisco Sanchez was serving a sentence of 25 years to life at the Elmira Correctional Facility, a maximum security prison operated by the New York Department of Correctional Services. Because of his good disciplinary history, Sanchez was housed in an “honor block” within the facility and was given the privilege of attend *257 ing evening educational and cultural programs provided at the facility’s school building. Indeed, along with a civilian instructor, Sanchez taught an evening Latinos Unidos of America program in the building.
The attack occurred at the conclusion of evening programming. According to Sanchez, a total of about 60 inmates had attended the programs which were held in four or five classrooms situated along a central hall in the school building.[1] Inmates who wished to participate in programming had to pass through metal detectors before gaining access to the school building area.[2] Sixteen inmates attended Sanchez’s program the evening of December 14, 1995.
As was the customary practice, when classes ended that evening the correction officer assigned to the floor opened a locked storage room located at the end of the hall and stood outside the room to supervise inmates who were returning coffee pots, television sets and other equipment used in the programs.
Responsible for ensuring that the classroom was clean before he returned to his housing area, Sanchez waited at the classroom door for the officer to check the room. Because the classroom entrance was in a small sidehall off the main hallway, the officer could not see Sanchez from his vantage point near the storage room, a distance of 60 to 65 feet away. During this brief interlude when Sanchez was out of the officer’s sight line, he was attacked by one or more unidentified inmate assailants. Sanchez testified that the attack lasted no more than 20 seconds and that the officer immediately responded to his cries for help.
Sanchez stated at his deposition that he was surprised by the attack and had no reason prior to the incident to suspect *258 that he would be assaulted. Having no basis to believe he was in danger, he had never alerted authorities at Elmira Correctional Facility that he might be at risk. He also testified that he never saw his attackers and still had no idea who had assaulted him or what motivated the attack.
We agree with the majority that the State owes a duty of care to inmates confined in State correctional facilities — and the State has never contended otherwise. The issue upon which we disagree is the scope of that duty. It is well-settled that the duty of care is bounded by the foreseeability of the risk of harm (N.X. v Cabrini Med. Ctr., 97 NY2d 247, 253 [2002]; Pulka v Edelman, 40 NY2d 781 [1976]). “Foreseeability of risk is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated” (Di Ponzio v Riordan, 89 NY2d 578, 583 [1997] [citation omitted]). Once an injury has occurred, the risk becomes obvious and it is tempting with the benefit of hindsight to conclude the risk was unreasonable and the harm foreseeable. However, many activities involve inherent risks; it is only when an unreasonable and foreseeable risk of harm is disregarded that a party may be held liable in negligence.
What constitutes an unreasonable, foreseeable risk of an inmate-on-inmate assault in a prison setting? This Court has not directly addressed the nature of the duty the State owes to an inmate in a state correctional facility or the extent to which the State may be held liable on an inadequate supervision theory for an inmate attack. The most analogous case is Flaherty v State of New York (296 NY 342, 346 [1947]). There, one youth confined at a state juvenile facility attacked another by pouring acid on his face in the middle of the night. The Court observed that “[t]he State — just as any other party — is responsible, in the operation and management of its schools, hospitals and other institutions, only for hazards reasonably to be foreseen, only for risks reasonably to be perceived” (id. [citations omitted]).[3] It ruled:
*259 “[s]hort of constant guarding and watching — unreasonable under the circumstances — the authorities could not have prevented so furtive and secret a deed. * * * ‘[T]he State is held only to a duty of taking precautions against those risks “reasonably to be perceived” ’, and, since here no hazard was apparent, [the assailant’s] act cannot give rise to liability against it” (id. at 346-347).
Similarly, this Court has previously held that an unreasonable risk of danger must be foreseeable before a lawsuit will be sustained arising from personal injuries suffered by an incarcerated inmate. In Gordon v City of New York (70 NY2d 839 [1987]), the Court dismissed the claim brought by an inmate who had attempted suicide by climbing the bars of his cell and plunging head first into the toilet. The Court observed that a duty arises to provide reasonable care to assure that harm does not occur when authorities know or have reason to know that a prisoner has suicidal tendencies or might physically harm himself. Because the plaintiff in Gordon failed to establish that the injury could have been foreseen — that the City’s conduct was not reasonable in light of what could have been anticipated — plaintiff failed to establish a prima facie negligence claim.
The same duty analysis has been applied to claims by public school students arising from criminal attacks on school grounds. In Mirand v City of New York (84 NY2d 44 [1994]), the Court considered whether a public school could be liable for injuries sustained by a student who was attacked by other students. The Court described the foreseeability rule as follows:
“In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated * * *. Actual or constructive notice to the school of prior similar conduct is gener *260 ally required because, obviously, school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily; an injury caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act” (id. at 49).
Because plaintiff had notified a teacher prior to the assault of a previous altercation on school grounds during which one of the assailants threatened to kill her, the Court concluded the jury verdict in favor of plaintiff was supported by sufficient evidence that the school had notice of an imminent danger to plaintiff. In the absence of this foreseeability evidence, the fact that the school had failed to comply with its security plan was deemed insufficient to provide a basis for liability.
Most recently, in N.X. v Cabrini Med. Ctr. (supra), this Court was asked to determine whether a hospital could be held liable on an inadequate supervision theory for its failure to protect a patient recovering from the effects of anesthesia from sexual assault by a doctor. The Court emphasized that although a hospital owes a duty of care to its patients, it is not an insurer of patient safety and is not required to keep its patients under constant surveillance. “As with any liability in tort, the scope of a hospital’s duty is circumscribed by those risks which are reasonably foreseeable” (id. at 253). The Court ultimately concluded that there was a triable issue of fact as to whether the hospital could be held responsible because a jury could find that the physician’s behavior prior to the incident should have alerted nurses who were standing nearby that plaintiff was in jeopardy which would have triggered a duty to attempt to prevent the assault.
Consistent with this Court’s jurisprudence in inadequate supervision cases, the Appellate Divisions generally have applied a duty rule that recognizes the unique nature of prison settings and the special security and institutional concerns attendant to operating such facilities. Our courts have long applied this rule, effectively holding that the State does not breach the duty of reasonable care it owes to inmates unless the assault was foreseeable, that is the State knew or had reason to know of an unreasonable risk of an inmate-on-inmate attack yet failed to take appropriate action to ameliorate the risk or to assist the inmate once the attack was underway (see *261 e.g. Blake v State of New York, 259 AD2d 878 [1999]; Littlejohn v State of New York, 218 AD2d 833 [1995]; Colon v State of New York, 209 AD2d 842 [1994]; Padgett v State of New York, 163 AD2d 914, Iv denied 76 NY2d 711 [1990]). The notice requirement accounts for the fact that it is impossible to eradicate all risks of violence within a prison setting as long as inmates are allowed contact with one another.[4] In light of this reality, although the State certainly aspires to eradicate all threats of prison violence facing inmates and correction officers, it should be liable in tort only when it fails to appropriately address unreasonable risks of attack of which it is or should be aware. Such a rule is necessary to avoid imposing insurer-like liability on the State for the criminal acts of inmates.
We agree with the majority that the rule articulated by the Appellate Division in this case too narrowly defined the types of proof that would suffice to raise an issue of fact concerning foreseeability. The Court recognized three situations: (1) where the State knew that the victim was at risk of assault; (2) where the assailant was known to be dangerous; or (3) where the State was aware of an attack but failed to appropriately intervene to assist and protect the victim.[5] While these circumstances are certainly the most common means by which actual or constructive notice is established, the list is incomplete; other types of proof would also raise a question of fact. For example, an inmate might establish foreseeability by offering proof that there were a number of prior attacks in a certain location in a facility, indicating an unreasonable risk of harm *262 particular to that place, or by demonstrating that the authorities received threats or were aware — or should have been aware — of other indicia of unrest prior to a certain event or program which ultimately culminated in violence.
Just because the foreseeability factors were described too restrictively, it does not follow that the Appellate Division erred in dismissing the claim in this case. Not only did Sanchez fail to offer any proof with respect to the three most common circumstances relating to foreseeability, he failed to offer any other proof from which a reasonable jury could infer the State knew or should have known that there was an unreasonable risk of violence.
Sanchez stated in his deposition that the attack came as a total surprise to him. He did not realize he had any enemies and nothing had occurred during the evening program which alerted him to a danger of attack. In support of his motion for summary judgment, Sanchez did not submit any evidence that attacks had occurred at this location in the past or even that violent incidents had previously occurred at the conclusion of evening programming. Similarly, although he included an affidavit from a penological expert who asserted generally that “[ajssembly times are notorious periods for the occurrence of inmate-on-inmate assaults,” no evidence was proffered that there is an elevated risk of violence among inmates after special programming classes. The expert’s conclusory statements did not even allege the existence of an enhanced risk during assembly periods at the Elmira Correctional Facility in particular or even in New York Department of Correctional Services prisons in general. In sum, no evidence was submitted which would distinguish the circumstances leading up to this attack from those present every day at any correctional facility in New York State. If an inmate can establish a question of fact concerning the foreseeability of a criminal attack on these facts, the foreseeability requirement has effectively been eviscerated from the duty equation.
The majority focuses on the expert’s general allegations of breach of duty — a separate element of the negligence claim. The penological expert asserted, in conclusory fashion, that the officer failed to “actively supervise” Sanchez as required by State Commission of Correction rules[6] and contended that one officer was insufficient to supervise the number of inmates pres *263 ent for evening programming. But the adequacy of supervision in a given situation cannot be assessed in a vacuum — it must be correlated with an existing unreasonable risk of harm which the supervision is intended to ameliorate. Unless this Court is prepared to say that supervision must be constant and unremitting — something it has expressly declined to do in analogous circumstances — liability cannot be predicated on the mere fact that the officer could not see claimant at the time of the attack but was supervising other inmates who were returning equipment to a nearby storeroom. The officer in question in this case did not abandon his post — he was attending to a legitimate security function when the assault occurred. In the absence of evidence that there was a particular danger of inmate violence of which the State was or should have been aware, the fact that the officer did not keep Sanchez under constant surveillance simply should not give rise to liability.
In conclusion, we cannot countenance this expansion of state liability for personal injuries caused by the criminal acts of inmates. Nor can we ignore the anomaly created by the majority’s holding, which allows this claimant to proceed to trial in circumstances where a schoolchild or hospital patient who was the victim of a similar sudden attack would be foreclosed from doing so.
Judges Smith, Levine, Ciparick and Rosenblatt concur with Chief Judge Kaye; Judge Graffeo dissents and votes to affirm the granting of the State’s motion for summary judgment in a separate opinion in which Judge Wesley concurs.
Order modified, etc.

. Although Sanchez’s expert was asked to assume that there were approximately 100 students in attendance, this assumption is not substantiated by record proof in evidentiary form. Sanchez testified at his deposition that there were about 60 inmates in the vicinity. Although Sanchez referenced a callout sheet in his attorneys’ affidavits which would indicate that, if every inmate who participated in programming had attended that evening, the total would approximate 100, that document does not establish that all inmates were actually present that evening.

. Sanchez’s expert assumed that inmates attending evening programming did not have to pass through a metal detector. The only admissible evidence in the record is to the contrary. The correction officer who supervised the area unequivocally stated that inmates had to pass through metal detectors before they were allowed access to the school building area. Sanchez did not contradict this testimony and no other evidence from any party with a basis of knowledge supports the expert’s assumption.

. In Flaherty the State’s duty was likened to that of any other party, but this Court has since recognized that, insofar as it manages facilities which house inmates for the protection of the public, the State is not like other litigants. In Sebastian v State of New York (93 NY2d 790 [1999]), the Court held that the State’s supervision of a juvenile incarcerated at a Division for Youth facility was a quintessentially governmental function for which the State was protected by broader immunity than a private litigant would enjoy.
*259 This conclusion was fortified by policy considerations, including the possibility that imposing tort liability would interfere with the State’s pursuit of rehabilitation as a goal and would instead lead to more restrictive custodial supervision of facility inmates to reduce the risk of liability. Although the State has not argued here that it is immune from suit, many of the policy concerns underlying the immunity cases inform our conclusion in this case.

. While tort liability is often used as a tool to deter misconduct in other settings, it is an ineffectual instrument for addressing the delicate security and other interests which authorities must assess in determining the appropriate degree of autonomy within the prison setting to provide inmates like Sanchez who have behaved well enough to earn the privilege of attending evening programming. Prison officials are faced with the unenviable task of balancing the risk of inmate attack arising from contact between inmates against the significant role such interactions play in maintaining inmate morale and, in some cases, furthering the important goal of rehabilitation.

. The majority in this Court characterizes these categories as requiring proof of actual notice in every case. We disagree. Certainly, authorities would be on actual notice if they received information regarding a threat that a specific inmate would be attacked at a certain time or place. However, proof that a particular inmate was vulnerable because he was about to be transferred or had been attacked or targeted for violence in the past, for example, would constitute only constructive notice of a risk of attack, yet it would fulfill the first circumstance identified by the Appellate Division as a basis for liability (see e.g., Sebastiano v State of New York, 112 AD2d 562 [1985]).

. As the expert acknowledged, the rules were not promulgated by the Department of Correctional Services, the agency which operates the state *263 prison system, and apply only to county jails. Even if the rules applied to this correctional facility, they do not mandate either constant visual surveillance of inmates or the continuous occupation of a security desk in any area other than a facility housing area. Indeed, beyond the requirement that security posts in housing areas be manned at all times — irrelevant here since the attack did not occur in a housing area — “active supervision” involves maintaining an uninterrupted ability to communicate orally with and respond to each prisoner, visually observing each prisoner at least once every 30-minute interval and being able to immediately respond to emergency situations (9 NYCRR 7003.2 [e]; 7003.4 [a]). Even viewing the facts in the light most favorable to claimant, he failed to allege a lack of “active supervision” here since it is undisputed that the correction officer was always in a position to communicate orally with Sanchez, his visual contact was only interrupted for a brief period, and the officer immediately responded to Sanchez’s cries for help. 9 NYCRR 7003.3, which applies by its terms solely to “[sjupervision of prisoners in facility housing areas” similarly provides no basis for imposing liability here.