◼ BRUCE AUGER, Appellant, v STATE OF NEW YORK, Respondent. [693 NYS2d 343] —Peters, J. Appeals from two judgments of the Court of Claims (Benza, J.), entered August 3, 1998, upon a decision of the court in favor of the State.

Claimant, an inmate at the Eastern Correctional Facility in Ulster County, was assaulted on December 13, 1989 by fellow inmate John Muzio. By notice of claim dated January 2, 1991, claimant alleged that the altercation and his injuries were caused by the negligent supervision of correctional officials. Pursuant to a subsequent claim dated August 13, 1992, claimant alleged medical malpractice by the State in its treatment of his injuries. Following discovery, these claims were consolidated.* After a one-day trial in November 1997, the action was dismissed, prompting this appeal.

---

* The State thereafter proffered a motion for summary judgment which was denied by the Court of Claims on timeliness grounds pursuant to CPLR 3212 (a). While the appeal of that motion was pending before this Court, the

Notwithstanding our broad scope of review in a nonjury trial, we accord great deference to the credibility determinations rendered by the trial court due to its ability to view the witnesses and the evidence firsthand (*see, Martinez v State of New York*, 225 AD2d 877, 878; *see also, Huertas v State of New York*, 84 AD2d 650, 651). In reviewing the dismissal of the claim alleging inadequate supervision, it is well settled that " 'the State has a duty to use reasonable care to protect its inmates from foreseeable risks of harm, including risks of attack by other prisoners' " (*Littlejohn v State of New York*, 218 AD2d 833, 834, quoting *Colon v State of New York*, 209 AD2d 842, 843). However, we have made it clear that "[t]he State * * * is not an insurer of inmate safety, and negligence cannot be inferred solely from the happening of an incident" (*Colon v State of New York*, supra, at 843; *accord, Padgett v State of New York*, 163 AD2d 914, *lv denied* 76 NY2d 711).

Relying upon *Sebastiano v State of New York* (112 AD2d 562), claimant contends that the risk to his security was known and the State failed to adequately protect him from Muzio. Upon our review of the record, we disagree. Claimant met Muzio in 1988 and never considered him an enemy during the six months that they were in the same facility. Prior to this incident, there were no altercations between them. Muzio had even helped claimant arrange transportation for claimant's wife to visit the facility. Correction Officer Dominick Galizia, who was assigned to their hall, testified that there were no indications of friction between them and that, on occasion, he would observe them going into each other's cells. On the night of the incident, Galizia noticed claimant outside of Muzio's cell yelling at him. He testified that he came out of his office and started walking towards them. Claimant returned to his cell with Muzio running close behind. Galizia then heard a loud noise and banging inside claimant's cell and, by the time that he got there, Muzio was gone. Galizia observed the cell in disarray and claimant injured and lying on the floor. He testified that the fight lasted anywhere between 30 to 45 seconds. The admission of Correction Officer Herman Bauder's testimony established the approximate distances between Galizia's office and the cells where these incidents occurred.

Without further evidence indicating that Muzio was a known dangerous prisoner (*see, Littlejohn v State of New York*, 218

___

Court of Claims further denied the State's motion for a stay during the pendency of the appeal. This Court ultimately reversed the denial of the summary judgment motion (236 AD2d 177) and remitted the matter for a consideration on the merits. It was ultimately withdrawn.

AD2d 833, 834, *supra*; *Colon v State of New York*, 209 AD2d 842, 844, *supra*) or that the State, through its correction officers, could have prevented this assault (*cf., Huertas v State of New York, supra*), we find no basis upon which we should disturb the determination rendered despite noted inconsistencies in Galizia's testimony. "[T]he mere fact that a guard was not present within the cellblock at the time of the incident [is] insufficient, absent a showing that prison officials had notice of an especially dangerous situation, to support a finding that the State failed to exercise reasonable care" (*Padgett v State of New York, supra*, at 915). Having further reviewed and rejected claimant's remaining contentions, we decline to disturb the decision rendered on this issue.

Similarly unavailing is claimant's contention that sufficient evidence was presented to support his claim alleging medical malpractice premised upon the State's failure to perform or arrange for surgery on his leg. "It is fundamental law that the State has a duty to provide reasonable and adequate medical care to the inmates of its prisons" (*Rivers v State of New York*, 159 AD2d 788, 789, *lv denied* 76 NY2d 701). To allege a claim of medical malpractice, however, the "claimant must [demonstrate] * * * that the physician deviated from accepted medical practice and that the alleged deviation proximately caused his [or her] injuries" (*Parker v State of New York*, 242 AD2d 785, 786). Claimant's expert, Arthur Davidson, stated that in his professional opinion, the X rays mandated a surgical repair of the fracture as opposed to casting and that the failure to operate constituted a major deviation from accepted medical practice which proximately caused his injuries. Raelene Milicevic, a physician employed by the State, testified that she referred claimant outside of the facility for consultation with orthopedic specialists. Although surgery had been presented as an option and was, in fact, scheduled at one point, she contended, and we agree, that all such outside consultants, including Govindlal Bhanusali and Michael Kamalian, ultimately decided against it after their continuous review of successive X rays. Milicevic further testified that she continued to monitor claimant's progress through these outside orthopedic surgeons and that no further recommendation for or request that she arrange for surgery was communicated. As the trial court had the opportunity to assess firsthand the conflicting opinions proffered by the experts and credited the opinion held by the State's outside consultants (*see, Martinez v State of New York*, 225 AD2d 877, 878-879, *supra*) over that of claimant's expert who was a board-certified surgeon with a background in orthopedics but was not an orthopedic surgeon, we find no

basis upon which we should disturb the determination rendered (*see, Rivers v State of New York, supra*).

Dismissing as without merit claimant's final contention of error alleging a failure to exclude Galizia from the courtroom where he served not only as a witness to the incident but also as a representative of the State, we affirm the decisions below in their entirety.

Mercure, J. P., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgments are affirmed, without costs. [*See,* 171 Misc 2d 866.]