OPINION OF THE COURT
Chief Judge Kaye.
In this inmate-on-inmate assault case, appellant Francisco Sanchez’s negligent supervision claim against the State was dismissed on summary judgment, on the ground that the attack was unforeseeable as a matter of law. We conclude that this record raises a triable issue as to foreseeability.
The essential facts are undisputed. On December 14, 1995, two unidentified fellow inmates in Elmira Correctional Facility, a maximum security prison, attacked Sanchez. The attack *250 occurred on the second floor of a school building the prison used for inmate evening programs. On the night of the assault, one correction officer was assigned to supervise approximately 100 inmates in the school area.[1] The officer’s individual security post description, which set out his responsibilities for the evening, required him to “remain alert and monitor Inmates’ Behavior * * * to prevent or stop assaults on * * * Inmates.”
The officer was stationed at a desk at one end of a 60-foot long corridor, off which were six classrooms, with a storage room at the opposite end of the corridor. Perpendicular to the main corridor, near the officer’s desk, was a shorter hallway leading to two additional classrooms and an open stairwell where inmates were allowed to smoke. From his desk, the officer could see down the long hallway and, by virtue of a wall-mounted mirror, he could also see down the shorter hallway. Sanchez and a civilian were in a classroom off the shorter hallway, conducting a class on Latino culture.
At the time of the attack, the inmates were all preparing for “go-back,” or return to their housing units. As a leader of his class, Sanchez was required to clean up his classroom and then stand just outside the doorway to await inspection and release by the officer.
As was his routine, the correction officer at the close of classes left his desk and was at the storage room at the opposite end of the corridor, supervising inmates returning television sets and other equipment. From the storage room, he was unable to see the hallway where Sanchez was required to stand awaiting inspection. Without warning, Sanchez was punched and slashed across his face from behind with a razor-like instrument, causing a wound that required 40 stitches. The attack lasted less than 20 seconds, and the officer came to Sanchez’s aid less than one minute after the attack. In his deposition, Sanchez testified that he was completely surprised by the attack and had no reason to believe he was going to be attacked.
Sanchez brought a claim against the State for negligent supervision, and the State sought summary judgment on the ground that the attack was not foreseeable. In support of his *251 claim, Sanchez submitted the affidavit of an expert witness, who opined that the State’s supervision of Sanchez on the night of the assault violated generally accepted penological standards of care including the following:
• The State failed to provide “active supervision” while the inmates were in a congregate setting outside the housing area, in violation of rational and effective standards of penological supervision.[2]
• No security can be provided by one officer in a school area that has corridors of 60 or more feet in length, that has at least nine rooms (as here), that is configured so as to contain a “T” intersection which precludes total visual surveillance of the area, and that is occupied by 101 inmates.
• The officer, standing at least 60 feet from Sanchez, was not able to prevent assaults or immediately respond to emergency situations, and was not reasonably able to control the activities in the area where Sanchez was assaulted.
• “Go-back,” a time of great inmate movement, is a notorious time for inmate-on-inmate assaults, and the officer positioned himself where he was unable to provide any sort of supervision.
• The officer’s habitual practice of going to the storeroom during “go-back” while requiring certain inmates (like Sanchez) to remain in front of their classrooms awaiting discharge, gave the assailant an opportunity to carry out the assault.
These assertions were not disputed by the State.
The Court of Claims granted the State’s motion for summary judgment and denied Sanchez’s cross-motion for summary judgment. The Appellate Division affirmed, stating that in *252 inmate assault cases, proof of foreseeability essential to a negligence claim requires a showing: (1) that the State knew the victim was at risk and failed to take reasonable steps to protect him or her; (2) that the State knew the assailant was dangerous but failed to protect other inmates from him or her; or (3) that the State had both notice and the opportunity to intervene for the purpose of protecting the victim but failed to do so. In the Court’s view, claimant’s testimony that the attack came as a complete surprise to him itself negated notice to the State and an opportunity to protect him. Lacking proof of notice, the Appellate Division granted the State’s summary judgment motion and dismissed Sanchez’s negligent supervision claim. We now reinstate the claim.
Discussion
“The law is clear; it is only in its application that difficulty is encountered” (Flaherty v State of New York, 296 NY 342, 346 [1947]). That astute perception has particular resonance in the appeal before us.
A defendant stands liable in negligence only for breach of a duty of care owed to the plaintiff (see Pulka v Edelman, 40 NY2d 781, 782 [1976]). The existence and scope of an alleged tortfeasor’s duty is, in the first instance, a legal question for determination by the courts (see Di Ponzio v Riordan, 89 NY2d 578, 583 [1997]). Regardless of the status of the plaintiff, the scope of the duty owed by the defendant is defined by the risk of harm reasonably to be perceived (see Basso v Miller, 40 NY2d 233, 241 [1976]). In words familiar to every first-year law student, “[t]he risk reasonably to be perceived defines the duty to be obeyed” (Palsgraf v Long Is. R.R. Co., 248 NY 339, 344 [1928]). Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent (see Di Ponzio, 89 NY2d at 584).
These fundamental propositions apply with equal force to negligence claims against the State for inmate injuries sustained in assaults occurring in correctional facilities. Having assumed physical custody of inmates, whc cannot protect and defend themselves in the same way as thost at liberty can, the State owes a duty of care to safeguard inmates, even from attacks by fellow inmates (see Flaherty, 296 NY at 346; Re *253 statement [Second] of Torts § 320).[3] That duty does not, however, render the State an insurer of inmate safety. Like other duties in tort, the scope of the State’s duty to protect inmates is limited to risks of harm that are reasonably foreseeable (see Flaherty, 296 NY at 346; Wilson v State of New York, 36 AD2d 559 [1971]).
In Flaherty v State of New York (296 NY 342), this Court directly addressed the element of foreseeability in inmate-on-inmate attacks. There, an inmate at a juvenile rehabilitation facility, during the early morning hours, had obtained a cylinder of acid from a fire extinguisher and poured it over the sleeping victim’s head. The Court dismissed the victim’s negligence claim against the State on the ground that the assault was not reasonably foreseeable, recognizing that the State — like any other party — is responsible only for hazards reasonably to be perceived. As we held, there was no notice to the State that the victim was in danger, or that the assailant was dangerous, and no basis for concluding from factors such as the ratio of supervisors or the institution’s experience that the State was derelict in its supervision of the inmates. “Short of constant guarding and watching — unreasonable under the circumstances — the authorities could not have prevented so furtive and secret a deed” (id. at 346-347).
Similarly, in Gordon v City of New York (70 NY2d 839 [1987]), involving an inmate who intentionally injured himself in a holding pen, this Court reversed a jury verdict for plaintiff on the ground that he failed to establish foreseeability. In so concluding, the Court again looked to the defendant’s knowledge, with respect to both the injured inmate and the institution’s prior experience, determining that “the actions taken with regard to plaintiff were reasonable under the circumstances and that every possible precaution had been taken to guard against what was reasonably foreseeable” (id. at 841).
Here, the Appellate Division used a different test, requiring proof that the State actually knew that the particular victim was vulnerable to assault or the particular assailant was dangerous, or that the State actually knew that the as *254 sault was about to take place and had an opportunity to intervene and protect the victim. The State urges that this test is simply a distillation of the familiar, long-established principles for determining foreseeability. We disagree.
The strict requirement of specific knowledge for foreseeability is one that has evolved recently in the Appellate Division (see Smith v State of New York, 284 AD2d 741, 742 [2001]; Stanley v State of New York, 239 AD2d 700, 701 [1997]). While it offers a bright-line test, that line redefines the traditional standard of reasonableness that has long been the touchstone of the law of negligence, and it cuts off consideration of other factors that have previously been found relevant to foreseeability.
What the State actually knew plainly falls within the ambit of foreseeability. But the Appellate Division actual notice test precludes additional consideration of the State’s constructive notice — what the State reasonably should have known — for example, from its knowledge of risks to a class of inmates based on the institution’s expertise or prior experience, or from its own policies and practices designed to address such risks (see e.g. Schittino v State of New York, 262 AD2d 824, 825-826 [1999]; Caruso v County of Suffolk, 234 AD2d 495, 495-496 [1996]; Sebastiano v State of New York, 112 AD2d 562, 564 [1985] [Levine, J.]; see also Farmer v Brennan, 511 US 825, 843 [1994]). Claimant’s testimony that the attack came as a complete surprise to him cannot be the measure of the duty of the State, as his custodian, to safeguard and protect him from the harms it should reasonably foresee based on its knowledge derived from operation of a maximum security prison.
The Appellate Division test, in short, improperly modifies the test for foreseeability from what is reasonably to be perceived, to what is actually foreseen, and thus unduly circumscribes the standard of care normally due any party: reasonable care under the circumstances (see Basso, 40 NY2d at 241; Flaherty, 296 NY at 346).
Because of the procedural posture of the present appeal the question before us is a narrow one. To obtain summary judgment, the State must meet a high threshold: there must be only one conclusion that can be drawn from the undisputed facts — that as a matter of law injury to Sanchez was not reasonably foreseeable. This record will not support that conclusion. The security post description and the Correction Commission regulations (9 NYCRR 7003.2, 7003.4) — drafted by the State, known to the correction officer and submitted as *255 relevant to the State’s duty of care — required that he maintain constant contact with the inmates and consistently monitor inmate behavior for the very purpose of preventing inmate-on-inmate assaults. The State itself has identified the appropriate response to a risk of assaultive conduct, and cannot now claim it was unforeseeable as a matter of law that this type of conduct would occur. Even more to the point, this record by expert affidavit identifies a risk of assault to a class of prisoners in a maximum security prison, including claimant, when they are habitually placed out of sight of any officer during a time that inmates in a congregate setting are moved between facilities, and the existence of such a risk is uncontroverted.
Addressing the dissent, we are unanimous in concluding that the State owes a duty of care to inmates for foreseeable risks of harm; and that foreseeability is defined not simply by actual notice but by actual or constructive notice — by what the “State knew or had reason to know” (dissenting op at 260), what the State “is or should be aware” of (dissenting op at 261). The requisite foreseeability is as to a “risk of harm” (dissenting op at 258, citing N.X. v Cabrini Med. Ctr., 97 NY2d 247,253 [2002]), or “injury-producing occurrence” (dissenting op at 258, quoting Di Ponzio, 89 NY2d at 583), or “risk of an inmate-on-inmate attack” (dissenting op at 260, citing e.g. Blake v State of New York, 259 AD2d 878 [1999]).
In applying that test, however, the dissent would add to the mix, and to our law, a requirement of proof of specific notice of time, place or manner of the risk — in effect, adding a fourth category of actual notice to the Appellate Division’s test, rather than applying the knew-or-should-have-known standard of foreseeability on which we unanimously agree.
Nor do we open the floodgates to litigation, or require constant surveillance, by denying the State summary judgment on this record. Here, there is uncontested evidence of State rules and regulations relevant to foreseeability; uncontested evidence of an elevated risk of inmate-on-inmate attack during congregate “go-back” time; and uncontested evidence of both the regularity of the correction officer’s inattentiveness at precisely that time and the officer’s inability to see claimant at the location where he was required to stand.[4] Even applying the dissent’s test, these combined factors should be sufficient to *256 raise an issue of fact as to constructive notice of “other indicia of unrest” (dissenting op at 262) without the necessity for specifying a particular class of inmates or naming a particular maximum security facility. Danger is danger.
We will not engage in extended discussion regarding foreseeability in public schools, hospitals or housing (see e.g. N.X. v Cabrini Med. Ctr., 97 NY2d at 253; Mirand v City of New York, 84 NY2d 44, 49 [1994]; Jacqueline S. v City of New York, 81 NY2d 288, 294-295 [1993]). We are concerned in this negligent supervision case with what risk the State, operating a maximum security prison and having custody of inmates forcibly surrounded by felons — many of them with a proven capacity for violence — should reasonably have foreseen in the circumstances presented.
Finally, we underscore that the State’s duty to prisoners does not mandate unremitting surveillance in all circumstances, and does not render the State an insurer of inmate safety. When persons with dangerous criminal propensities are held in close quarters, inevitably there will be some risk of unpreventable assault, a risk the State cannot possibly eradicate. The mere occurrence of an inmate assault, without credible evidence that the assault was reasonably foreseeable, cannot establish the negligence of the State.
Because we conclude that there is a triable issue, the lower courts improperly granted summary judgment to the State, and properly denied claimant’s motion for summary judgment. Accordingly, the order of the Appellate Division should be modified, without costs, by denying the State’s motion for summary judgment and, as so modified, affirmed.

. Whether five dozen or eight dozen inmates were congregated in the area (see dissenting op at 257 n 1) is not material to our conclusion. The “master callout sheet” lists well over 100 inmates signed up and authorized to attend classes that evening (see also 288 AD2d 647). The number 60 was Sanchez’s guesstimate. The number of inmates gathered together outside their housing unit when claimant was attacked was, in any event, large.

. The State Commission of Correction Minimum Standards and Regulations for Management of County Jails and Penitentiaries require that when prisoners are participating in activities outside housing areas, the responsible staff shall maintain “active supervision,” which consists of the “uninterrupted ability to communicate orally with and respond to each prisoner * * * [and] the ability * * * to immediately respond to emergency situations” (9 NYCRR 7003.2 [c] [1], [3]; 7003.4). Although these regulations apply to county jails and penitentiaries, not state prisons, the expert concluded that they are relevant in establishing a reasonable standard of supervision, and they are thus also relevant to our foreseeability analysis.

. Sebastian v State of New York (93 NY2d 790 [1999]) in no way undermines Flaherty’s holding that, in its operation of prisons, the State owes the same duty of reasonable care as any other party (dissenting op at 258-259 n 3). Sebastian addressed an entirely different situation: whether, absent a special relationship, the State can be liable to a private party injured by a juvenile who escaped from a detention facility. Here — just as in Flaherty — the injured party was in the State’s custody.

. We all agree that “liability cannot be predicated on the mere fact that the officer could not see claimant at the time of the attack * * *” (dissenting op at 263). That is not the issue in this case.