■ Howard Smith, Respondent, v County of Albany et al., Appellants. [784 NYS2d 709]—

Crew III, J. Appeal from an order of the Supreme Court (Benza, J.), entered March 4, 2004 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

On January 17, 2001, while an inmate at defendant Albany County Jail, plaintiff was injured when he intervened in an altercation between James Nelson, a member of the "Bloods" gang, and Walter Lindsay, another inmate. The altercation took place following a meeting between plaintiff and Nelson in the facility's law library. As a result of this incident, plaintiff sustained a 21-centimeter deep laceration to his left forearm that required 48 stitches to close and left a permanent six-inch scar.

Plaintiff thereafter commenced this action against defendants alleging, inter alia, that they failed to maintain proper control and exercise appropriate supervision over the inmate population and, in particular, failed to adequately protect plaintiff from a razor blade-wielding inmate. Following joinder of issue,

defendants moved for summary judgment dismissing the complaint. Supreme Court denied defendants' motion, finding a question of fact as to whether the correction officer stationed inside the law library at the time responded adequately to the assault. This appeal by defendants ensued.

We affirm. The case law makes clear that "[h]aving assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the [s]tate owes a duty of care to safeguard inmates, even from attacks by fellow inmates" (*Sanchez v State of New York*, 99 NY2d 247, 252 [2002]; *see Auger v State of New York*, 263 AD2d 929, 930 [1999]; *Colon v State of New York*, 209 AD2d 842, 843 [1994]). The duty in this regard does not require the state or, here, a political subdivision thereof, to undertake "unremitting surveillance in all circumstances," nor, as applied to the action before us, does it cast defendants in the role of insurers of inmate safety (*Sanchez v State of New York, supra* at 256). Rather, "the scope of the . . . duty to protect inmates is limited to risks of harm that are reasonably foreseeable" (*id.* at 253). "Foreseeability," in turn, "is defined not simply by actual notice but by actual *or constructive* notice," i.e., by what defendants knew or should have known, by what they were or should have been aware of (*id.* at 255). Thus, in seeking to dispose of plaintiff's negligence action via summary judgment, defendants were required to meet a "high threshold," i.e., "there must be only one conclusion that can be drawn from the undisputed facts— that as a matter of law injury to [the inmate] was not reasonably foreseeable" (*id.* at 254). Based upon our review of the record as a whole, we cannot say that defendants met that burden here.

As a starting point, Supreme Court was quite correct in finding a question of fact as to the adequacy of the response to the assault by the correction officer stationed inside the facility's library at the time. Although a library clerk testified that the correction officer at issue remained inside the library and responded to the altercation between Nelson and plaintiff, plaintiff testified that the correction officer fled the library once the fight broke out. Such conflicting testimony presents a credibility issue for the finder of fact to resolve.

Additionally, our review of the record reveals a question of fact as to whether defendants knew, or at least should have been aware, that there was trouble brewing between Nelson and other members of the Bloods and plaintiff and his group of friends. In this regard, plaintiff testified that two days prior to the assault in the library, a confrontation occurred between a

member of the Bloods and Lindsay following a basketball game. Following this incident, plaintiff heard from another inmate that two of the Bloods possessed razor blades. Although plaintiff did not relay this information to facility personnel, another fight ensued between the respective groups, during which one of the Bloods pulled a razor blade on another inmate. According to plaintiff, correction officers broke up this fight before anyone was injured. The following day, plaintiff allegedly received death threats from Nelson, which he asserts he then reported to "CO Tammy." The record also contains a security risk group inmate determination form dated January 8, 2001, nine days before the assault on plaintiff, indicating that Nelson had been identified as a security risk based upon his membership in the Bloods, his admission to a special housing unit within the last year and a prior disciplinary report for assault and contraband in the nature of a weapon. Hence, even if defendants were not aware of a specific problem between Nelson and plaintiff, the record is more than sufficient to raise a question of fact as to whether defendants were aware of the security threat posed by Nelson and/or the animosity that existed and, indeed, was intensifying between the Bloods and plaintiff's group of friends in the two days prior to the assault in the library. That being the case, defendants' motion for summary judgment dismissing the complaint was properly denied.

Mercure, J.P., Spain, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.