■ Francisco Sanchez, Appellant, v State of New York, Respondent. [827 NYS2d 338]—

Mugglin, J. Appeal from a judgment of the Court of Claims (Lebous, J.), entered July 25, 2005, upon a decision of the court in favor of defendant.

In December 1995, claimant was an inmate at Elmira Correctional Facility in Chemung County. Claiming negligent supervision, he seeks damages for injuries sustained when he was attacked by one or more fellow inmates. Concluding that the record raised a triable issue of foreseeability, the Court of Appeals reversed this Court's affirmance of a summary judgment dismissal of the claim (99 NY2d 247 [2002]). After trial, the Court of Claims determined that defendant had no actual or constructive notice of the impending attack on claimant, and

that defendant did not fail to take sufficient precautions against the still-unknown assailants who committed the attack.

Defendant's duty is clear. "Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, [defendant] owes a duty of care to safeguard inmates, even from attacks by fellow inmates" (*id.* at 252 [citations omitted]; *see Di Donato v State of New York*, 25 AD3d 944, 944 [2006]), but negligence may not be inferred merely because an incident occurred (*see* 99 NY2d 247, 256 [2002], *supra*; *Spiratos v County of Chenango*, 28 AD3d 863, 864 [2006]). The scope of the duty owed is defined by the risk of harm reasonably to be perceived (*see Basso v Miller*, 40 NY2d 233, 241 [1976]). "Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent" (99 NY2d 247, 252 [2002], *supra* [citation omitted]). Both what defendant actually knew and what defendant reasonably should have known are within the ambit of foreseeability (*see id.* at 254).

Guided by these principles, we turn to the record of this trial. As inmates were leaving classes held on the second floor of a school building at this maximum security facility, claimant was punched from behind, knocked to the floor and cut with a sharp instrument. Absent proof that defendant had actual knowledge that claimant would be attacked, claimant relied on his expert witness to establish constructive notice. This witness testified that several breaches of the principles of "Penology of Supervision" prove that defendant should have known that claimant was vulnerable to attack. First, the expert testified to numerous factors that an institution should analyze upon receipt of an inmate to determine if he or she is subject to attack. On cross-examination, however, the expert admitted that there was no evidence that any factor he listed was applicable to claimant. Next, the expert testified that (1) only one correction officer was present in the classroom building where over 100 inmates were present, (2) this officer habitually used the dismissal time to supervise the storage of audiovisual equipment at the far end of an L-shaped corridor, (3) claimant was required to wait at the doorway of his classroom around the corner of the "L," out of sight of the officer, (4) inmates who commit assaults wish to escape detection and, therefore, commit them, not in the classrooms, but while leaving, and (5) because Elmira Correctional Facility experienced an inmate-on-inmate assault on the average of once every other day, it was reasonably foreseeable that claimant would be assaulted on this occasion.

In opposition, defendant's evidence established that (1) claimant had no known enemies, (2) claimant was attacked, according to his testimony, immediately after he exited the classroom, (3) his assailants are unknown so there is no evidence as to how long they had been attending classes or whether they were aware of the habits of the correction officer, (4) all of the inmates in the classroom building are there voluntarily to attend the evening programs and any rules violation would jeopardize this privilege, (5) it is not impermissible for one correction officer to supervise over 100 inmates in such a school building, (6) before entering the school building, all inmates pass through a metal detector to determine if they are carrying any weapons, and (7) in the five to seven years he had worked at the school building, the correction officer had had no prior incidents of inmate-on-inmate assault in that setting. According proper deference to the Court of Claims' findings, we conclude that its determination that the attack on claimant could not be reasonably foreseen by defendant is a fair interpretation of the evidence.

The Court of Claims properly found that defendant is not liable merely because the correction officer failed to keep claimant in his direct line of sight. Liability does not lie merely because the officer could not see claimant when claimant was attacked (*see id.* at 255 n 4, 256; *Elnandes v State of New York*, 11 AD3d 828, 829 [2004]). Absent a showing of dangerousness, "unremitting supervision" is unnecessary (*Colon v State of New York*, 209 AD2d 842, 844 [1994]; *see* 99 NY2d 247, 256 [2002], *supra*). Moreover, claimant's reliance on rules applicable to county jails (*see* 9 NYCRR 7003.2 [c] [1], [3]; 7003.4), general rules of penal institution supervision and general statistics concerning the frequency and timing of inmate-on-inmate assaults at Elmira Correctional Facility or any other maximum security facility prove only that such facilities are dangerous places where the *possibility* of inmate-on-inmate assaults exists. Such general proof is insufficient to establish that a *reasonable probability* existed that this claimant would be attacked at this time and place. In the absence of either actual or constructive notice, defendant is not liable.

Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs. [*See* 8 Misc 3d 1019(A), 2005 NY Slip Op 51191(U) (2005).]