■ CARMEN RODRIGUEZ, as Administratrix of the Estate of ALEX RIVERA, Deceased, Appellant, v CITY OF NEW YORK, Respondent. [834 NYS2d 10]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered September 27, 2005, which denied plaintiff's motion for partial summary judgment on the issue of liability, unanimously reversed, on the law, without costs, plaintiff's motion granted, and the matter remanded for a determination of damages.

On March 26, 1995, plaintiff's decedent Alex Rivera was sleeping in his detention cell at the NYC Adolescent Reception and Detention Center located in the Bronx when he was slashed with a razor on the back of his neck, on the side of his face, and on his arms by inmate Curtis Armstrong. Armstrong was a known dangerous inmate who had previously injured others at the detention center, including, on a prior occasion, the correction officer (Kevin Spencer), who was Armstrong's special escort at the time the instant attack took place. Spencer's duty had been to safely escort Armstrong from the recreation yard back to his detention cell. Along the way, Spencer took Armstrong to a "daybreak room" where he was subjected to a strip search and made to walk through a magnetometer. Spencer then took

Armstrong to the "1-Main segregation unit" where his cell was located (in the same housing area as Rivera's cell).

As the motion court noted with regard to the attack: "Though Mr. Armstrong was housed in cell number 29, he stopped in front of Plaintiff's cell, cell number 7, insisting that it was in fact his cell. The Correction Officer charged with escorting Mr. Armstrong left him standing in front of cell number 7 while he proceeded to walk toward the control room apparently to inquire about Mr. Armstrong's cell. While the Correction Officer was either walking toward or was in the control room the Correction Officer [Gonzalez] manning the control room electronically opened cell number 7, giving Mr. Armstrong access to the cell. Mr. Armstrong then proceeded to repeatedly slash plaintiff who was sleeping in the cell at the time."

In denying plaintiff's motion for partial summary judgment on the issue of liability, the motion court, citing *Sanchez v State of New York* (99 NY2d 247 [2002]), held, in pertinent part, that "[w]hile there is evidence of elevated risk and correction officer inattentiveness there still remains a question of fact with respect to the issue of notice. Specifically, whether there had been a specific threat against Plaintiff and did the New York City Department of Correction know or should they have known of such threat." In *Sanchez*, however, the Court of Appeals specifically rejected such "a requirement of proof of specific notice of time, place or manner of the risk" (*id.* at 255).

In *Sanchez*, claimant prisoner, a classroom aide, was punched from behind, knocked to the floor and cut with a sharp instrument in a classroom area of the prison as approximately 100 inmates were returning to their cells. The Third Department, in affirming the Court of Claims grant of the State's motion for summary judgment dismissing the complaint, held that, although foreseeability is normally a question of fact, due to the total lack of proof by claimant that he was known to be at risk or that his unidentified assailant was known to be dangerous, he failed to demonstrate that it was foreseeable that he would be assaulted. In addition, the court found that claimant's testimony that the attack was a complete surprise to him negated notice to the State and an opportunity to intervene to protect him (288 AD2d 647, 648 [2001]).

However, in reversing and denying the State's motion, the Court of Appeals held that the Appellate Division had applied an actual notice test which precluded additional consideration of the State's constructive notice, i.e., what the State reasonably should have known. It held that the fact that the attack came as a complete surprise to plaintiff cannot be the measure

of the duty of the State, as his custodian, to safeguard and protect him from the harms it should reasonably foresee based on its operation of, in that case, a maximum security prison (99 NY2d at 254). It further found that the uncontested evidence of the combined factors of: rules and regulations relevant to foreseeability; an elevated risk of inmate-on-inmate attack during congregate "go-back" time; the correction officer's inattentativeness at precisely that time; and the officer's inability to see claimant at the location where he was required to stand, was sufficient to raise an issue of fact as to constructive notice.

On remand, absent proof that the State had actual knowledge that he would be attacked, claimant relied at trial upon a penology expert, who testified to numerous factors to establish that the State had constructive notice; however, the expert admitted on cross examination that there was no evidence that any factor he listed was applicable to claimant. The State's evidence established, among other factors negating constructive notice, that in the five to seven years he had worked at the school building, the correction officer had had no prior incidents of inmate-on-inmate assault in that setting. As a result, the Court of Claims determined, that the State had no actual or constructive notice of the impending attack on claimant, and that it did not fail to take sufficient precautions against the still unknown assailants who committed the attack. In affirming, the Third Department, according proper deference to the Court of Claims' findings, concluded that the trial court had fairly interpreted the evidence in concluding that the attack on claimant could not have been reasonably foreseen by the State (36 AD3d 1065 [2007]).

Here, however, not only is it evident that the City had from its experience operating the 1-main segregation unit used to house "predicate" or "known violent" inmates, at the very least, constructive notice of pertinent reasonably foreseeable harms, it is also evident that the correction authorities, including the correction officers specifically involved in this incident, had actual knowledge of the assailant's known and well-documented propensity for violence. Indeed, Armstrong was described by Officer Gonzalez, who opened the cell door, as "the most dangerous inmate" in the detention center. Such actual notice is also indisputably evidenced by the necessity for a special escort and the strip search and magnetometer procedures required to safely escort Armstrong from the recreation yard back to his detention cell. In addition, contrary to the motion court's holding that there was a material question of fact as to whether or not there had been a specific threat against plaintiff

and whether the Department of Correction knew or should have known of such threat, the precise manner in which the harm occurred, or indeed the precise victim, need not be foreseeable. Liability attaches when the harm is within the class of reasonably foreseeable hazards, in this case inmate-on-inmate attacks, that the duty exists to prevent (*see Sanchez*, 99 NY2d 247, 253 [2002]).

Accordingly, although foreseeability is normally a question of fact, the City failed to present any evidence negating its actual or constructive notice of the foreseeability of the attack on Alex Rivera. Concur—Tom, J.P., Andrias, Saxe, Gonzalez and Sweeny, JJ.