IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2022 Session

## JEREMY C. KOFFMAN v. MADISON COUNTY TENNESSEE ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-19-4   Roy B. Morgan, Jr., Judge**

_____

### No. W2021-00385-COA-R3-CV
_____

In this case, which stemmed from an attack on an inmate at a county jail, the trial court granted judgment in favor of the Defendants.  Among other things, the trial court concluded that the assault on the inmate was not foreseeable.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Jason J. Yasinsky and David A. Siegel, Memphis, Tennessee, for the appellant, Jeremy Koffman.

Nathan D. Tilly and James I. Pentecost, Jackson, Tennessee, for the appellees, Madison County, Tennessee, and John Mehr, Madison County Sheriff.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On March 9, 2017, Jeremy Koffman pleaded guilty to two misdemeanor drug charges.  Although the Madison County General Sessions Court sentenced him to serve 11 months and 29 days, this sentence was suspended pursuant to a supervised probation program.  Several months later, however, Mr. Koffman was charged with violating his probation, and on January 9, 2018, he was arrested and booked into the Madison County Jail.  After the intake process was completed at the jail, the booking officer assigned Mr. Koffman to a cell in the "C pod."  The C pod is made up of twelve different units, and each unit holds ten or more inmates depending upon the number of inmates incarcerated in the jail at any given time.

Officers Laci Lott and Kevin Rogers were assigned to the jail's C pod on the date of Mr. Koffman's booking. Sometime shortly after 9:00 p.m. on that date, Officer Lott observed an inmate in Unit 104 waving a towel at the camera in the unit via a video monitor. As soon as Officer Lott observed this, she spoke to the inmate in Unit 104 through the intercom system. The inmate informed her that Mr. Koffman had been assaulted in Unit 106. Upon being informed of the assault, Officer Lott immediately radioed for a sergeant to go with her and Officer Rogers into Unit 106. The sergeant, Officer Lott, and Officer Rogers subsequently entered Unit 106, at which time no assault was still ongoing. According to an affidavit attested to by Officer Lott, they found Mr. Koffman "lying in the corner of the door with his face covered with a towel." They immediately escorted Mr. Koffman to be seen by the jail nurse, and he was subsequently transported to the hospital for treatment.

The present lawsuit was commenced approximately a year later when Mr. Koffman filed a complaint in Circuit Court to recover for injuries he sustained in the January 9, 2018 assault. According to Mr. Koffman, several inmates had attacked him in the assault, resulting in a variety of injuries and physical and mental pain. The named Defendants, Madison County, Tennessee and Madison County Sheriff John Mehr ("the Defendants"), ultimately moved for summary judgment after certain discovery was conducted, arguing, among other things, that Mr. Koffman could not prove that the assault was foreseeable. The trial court agreed with the Defendants on this issue and granted them summary judgment. The trial court additionally held that the Defendants retained immunity to the extent that Mr. Koffman was attempting to place liability for jail classification and housing policies and procedures. Mr. Koffman thereafter appealed to this Court.

## DISCUSSION

In his brief on appeal, the sole issue Mr. Koffman raises is "[w]hether the trial court erred in granting summary judgment to Defendants/Appellees." Because resolving a motion for summary judgment is a question of law, we review the trial court's disposition on the issue de novo without a presumption of correctness. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008). A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin*, 271 S.W.3d at 83. When the moving party does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 264 (Tenn. 2015).

In beginning our substantive discussion of this case, it should initially be noted that, although jails can certainly be dangerous places, "penal institutions are not insurers of an inmate's safety." *Harvey v. Dickson Cty.*, No. M2007-01793-COA-R3-CV, 2008 WL 2165958, at *2 (Tenn. Ct. App. May 21, 2008). "The general rule is that the penal institutions merely have a duty to use reasonable and ordinary care to prevent *foreseeable* attacks on inmates by other inmates." *Id.* (emphasis added). This, of course, begs the question: when is an attack foreseeable? In answering this question, we are necessarily guided by the Tennessee Supreme Court's instruction in *King v. Anderson County*, 419 S.W.3d 232 (Tenn. 2013). As the Supreme Court noted in *King*, Tennessee courts have frequently stated that a penal institution must have had "prior notice of an attack." *Id.* at 248. The *King* court further explained that, for purposes of assessing the penal institution's liability, this prior notice can be actual or constructive:

> Such notice may arise from knowledge of specific threats to a specific inmate or group of inmates from another individual or group of individuals, or an inmate's prior institutional history of violent—including self-destructive or suicidal—behavior, or any other specific information or conditions that would provide prison officials with actual or constructive notice of foreseeable harm to specific individuals or groups of persons. As the Supreme Court of Nevada has held more recently, "[h]arm is foreseeable when prison officials actually know that an inmate is at risk, that the attacking inmate is dangerous, or when prison officials otherwise have reason to anticipate the attack." *Butler ex. rel Biller,* 168 P.3d at 1058; *see also Cooney,* 535 N.W.2d 609, 612; *Sanchez,* 754 N.Y.S.2d 621, 784 N.E.2d at 685 (Graffeo, J., dissenting) (foreseeability defined by actual and constructive notice, including but not limited to knowledge that the victim was at risk of assault, the assailant was known to be dangerous, the State was aware of an attack but failed to intervene, prior attacks occurred regularly in a certain location in a facility, or the State received threats or was aware or should have been aware of unrest prior to a specific event that culminated in violence); *Harrison,* 90 Ohio Misc.2d at 40, 695 N.E.2d 1248 (holding no liability for negligence exists in a prison setting where there is no "adequate notice" of an impending assault, including "notice of an imminent threat of harm" to specific individuals). *But see Sanchez,* 754 N.Y.S.2d 621, 784 N.E.2d at 679–80 (holding that constructive notice includes what the State "should have known—for example, from its knowledge of risks to a class of inmates based on the institution's expertise or prior experience, or from its own policies and practices designed to address such risks").

*Id.* at 249.

In detailing several past decisions of this Court illustrating the "prior notice" rule, the *King* court outlined as follows:

In *Gillespie*, for example, the Court of Appeals found that the government was not liable because it could not foresee an attack where an inmate gave only "vague and unspecified" reasons for avoiding a fellow inmate who teased him; he made no request to be moved away from that inmate, and the other inmate had no institutional history of violent behavior. *Gillespie*, 1992 WL 9441, at * 1, *3. In *Harvey*, the intermediate court found that no attack was foreseeable where the inmate-plaintiff had been incarcerated for twenty-three days prior to the assault without incident, had not previously considered his assailant to be a threat to his safety, had never told anyone that he felt threatened by his attacker, and the attacker had no institutional history of violence. *Harvey,* 2008 WL 2165958, at *4. Similarly, in *Kinningham*, the State was not liable where the inmate-plaintiff had been on friendly terms with his attacker and did not expect the sudden attack. *Kinningham*, 2001 WL 1089501, at *3. In *Hanks*, where the plaintiff was housed in a facility containing only minimum custody level inmates, the state could not have been on notice of any threat of harm where the plaintiff and his attacker had had verbal disagreements but never physical altercations, the plaintiff never complained about his attacker to prison officials or sought protective custody, and the assailant had no record of institutional violence. *Hanks*, 1999 WL 454459, at *1, *4.

*Id.* at 249-50.

Here, it is undisputed that Mr. Koffman provided no information to the booking officer indicating that he believed there were "incompatible" inmates in the jail. Likewise, it is undisputed that he provided no information at that time indicating that he believed he was in fear for his safety. Further, it is undisputed that neither Mr. Koffman nor any other inmate informed Officers Lott or Rogers that Mr. Koffman was being threatened or was in danger. Moreover, at no time did Mr. Koffman ever request that any Madison County officer place him in protective custody.

In an attempt to establish the foreseeability of his attack, Mr. Koffman points to evidence pertaining to Sadarius Reeves, one of the several inmates he contends was involved in the assault at issue in this case. Namely, Mr. Koffman notes that Mr. Reeves' booking report contains a notation stating that he "TAKES OTHER INMATES['] TRAYS AND BULLIES THEM." Although Mr. Koffman relies on this notation as evidence establishing the foreseeability of his assault, we respectfully disagree with his assessment. While a penal institution's prior notice of an attack can no doubt be either actual or constructive as previously noted, this governing standard pertains to a foreseeable *probability* of an injury, not simply a remote possibility. *See id.* at 248. Here, the trial court appropriately recognized that the notation in the booking report for Mr. Reeves "is not enough to place Defendants on either actual or constructive notice that he would assault Plaintiff." Indeed, the booking report notation in no way establishes that Mr. Reeves ever

- 4 -

engaged in physical violence against another inmate, or even threatened it. To the extent that Mr. Koffman appears to surmise that the reference to Mr. Reeves as one who "bullies" somehow necessarily connotes past physical violence, he is misguided. According to Merriam-Webster, to "bully" someone is "to treat [them] in a cruel, insulting, threatening, or aggressive fashion." Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/bully (last visited Feb. 5, 2022); *see also* Webster's Ninth New Collegiate Dictionary 187 (1989) (simply defining the verb bully as "to treat abusively"). Thus, the mere identification of a "bully" does not actually establish that such a person has a propensity to engage in physical violence against another. *See, e.g.*, *Smith v. CSX Transp., Inc.*, No. 10AP-588, 2011 WL 1049187, at *6 (Ohio Ct. App. Mar. 24, 2011) ("Based upon the testimonies of Chadwick Wayne Horsely, Louis Bouvier, and appellant, we believe that it was not reasonably foreseeable to appellee that Castle would physically assault appellant on June 20, 2005. Castle, known throughout the gang as a loud-mouth bully, never physically assaulted a co-worker prior to the incident with appellant."); *State v. VonStein*, No. CA2020-11-111, 2021 WL 3854851, at *3 (Ohio Ct. App. Aug. 30, 2021) (Piper, J., concurring) (noting that "bullies tend to intimidate, humiliate, or embarrass others, rarely engaging in serious physical harm"). In addition to the fact that the evidence relied upon by Mr. Koffman in no way establishes that Mr. Reeves ever engaged in past physical assaults on other inmates, Mr. Koffman did not adduce evidence showing that *any* of the inmates involved in his attack had shown a propensity to engage in a physical assault. If Mr. Reeves or any of the other inmates ever had previously been involved in physical altercations in the jail, Mr. Koffman failed to develop that point.

To summarize, Mr. Reeves' booking report simply did not provide notice to the Defendants that Mr. Koffman was likely to be a victim of an assault by Mr. Reeves. Indeed, as the Defendants argue in their brief, it "does not identify Reeves as violent, nor does it provide any information that Reeves had ever assaulted or otherwise hurt another detainee."

In view of the above discussion, we fail to find any error in the trial court's determination that this attack was not foreseeable. As we have noted, it is undisputed, among other things, that Mr. Koffman never provided any information to the booking officer that he feared for his safety and also never requested that he be placed in protective custody. Moreover, as far as the Defendants' knowledge is otherwise concerned, there is no evidence establishing that any of the inmates involved in the attack had histories of institutional physical violence. It is unfortunate that an attack occurred, but the Defendants of course cannot be held liable based on this fact alone. As it is, there is simply an absence of evidence here that would establish that there was any notice of foreseeable harm to Mr. Koffman, and the Defendants appropriately moved for judgment in their favor in light of the insufficiency of the evidence existing on the foreseeability issue. Finding no error, therefore, in the trial court's conclusion as to foreseeability, we hereby affirm its judgment

dismissing Mr. Koffman's case.[1]

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed.

s/ Arnold B. Goldin

ARNOLD B. GOLDIN, JUDGE

---

[1] We conclude that the foreseeability question is dispositive of this case and appeal. To the extent any other arguments discussed by the parties are not specifically entertained herein, they are pretermitted.