Perez v State of New York (2024 NY Slip Op 50863(U))

[*1]

Perez v State of New York

2024 NY Slip Op 50863(U)

Decided on June 14, 2024

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 14, 2024
Court of Claims

Jose Perez, Claimant,

against
The State of New York, Defendant.

Claim No. 135139

For Claimant:
Jose Perez, pro se
For Defendant:
LETITIA JAMES, ATTORNEY GENERAL
By: Ray A. Kyles, Esq.
Assistant Attorney General

Linda K. Mejias-Glover, J.

On July 30, 2020, Claimant, Jose Perez, (hereinafter, the "Claimant"), filed a verified claim seeking damages in the amount of $8,000.00 for negligent supervision by the Department of Corrections and Community Supervision ("DOCCS") due to a physical altercation, which allegedly occurred at the Auburn Correctional Facility (hereinafter "Auburn") on June 8, 2020, between him and another incarcerated individual resulting in back and leg injuries (hereinafter, the "Claim"). The State [FN1]
interposed a Verified Answer on September 25, 2020.
The matter was duly scheduled and called for trial on the record on June 12, 2024 [FN2]
. The Claimant testified on his own behalf and the State did not call any witnesses. The parties stipulated to Claimant's Exhibits 1 and 2 being entered into evidence. 
The Court took judicial notice of the pleadings, which are part of the Court's record, to wit: the Claim, along with the documents annexed thereto; and the Verified Answer. (see e.g. People v Petgen, 55 NY2d 529, 536 [1982] [recognizing a court's authority to take judicial notice of its own records]).
The parties stipulated to the following facts: On or about June 8, 2020, Mr. Perez was transferred from Southport Correctional Facility to Auburn Correctional Facility.
Relevant Testimony and Finding of Fact:
Claimant gave the following relevant credible testimony:
Claimant testified that while housed at Southport Correctional Facility ("Southport") a neighboring incarcerated person named Giodanni, read the transcript from his underlying criminal case, which erroneously stated that Claimant was a "sex offender" instead of "second offender," which resulted in Claimant receiving threats from several incarcerated individuals. He testified regarding a letter from Cassidy Kristal-Cohen, Client Advocate from the Center for Appellate Litigation, to Southport, and copied to DOCCS Commissioner Annucci (Ex. 1). This letter, dated April 3, 2020, requested that Claimant be put into protective custody ("PC") upon his release from the Special Housing Unit ("SHU") due to ongoing and persistent threats being made against Claimant's life. The letter further requested that upon his transfer to a new facility on April 29, 2020, he be placed in PC out of continued fear for his bodily well-being, and that the new facility be informed of Claimant's wishes to continue to be housed in PC. The letter further names, among others, incarcerated person Giodanni as one who threatened Claimant. Claimant presented a letter from DOCCS Deputy Counsel, Cathy Y. Sheehan, to Cassidy Kristal-Cohen, Advocate, dated May 28, 2020, acknowledging Ms. Kristal-Cohen's April 3, 2020 letter (Ex. 2).
Claimant testified that after DOCCS had been made aware of the threats by Giodanni against him, both he and Giodanni were transferred on June 8, 2020 via the same bus to Auburn. Upon arriving to Auburn, they were put into the same bullpen awaiting processing. After each transferred incarcerated person was processed, their shackles were removed and they were placed into a second bullpen — all without shackles. While still in the first bullpen, Claimant advised an officer of the threats from Giodanni. Claimant was placed into the second bullpen first followed by Giodanni. Shortly after Giodanni was put into the second bullpen, he and Claimant had a physical altercation. Claimant testified that as a result of the physical altercation, he twisted his left ankle and had red knuckles from defending himself, and that he hurt his back but not severely and did not need medical intervention for that. Both incarcerated individuals were issued misbehavior reports as a result and placed in SHU. Claimant was seen by medical staff, however, no medical records were made part of the trial record.
After the incident, Claimant testified that he was placed in PC and was later sent to Wende Correctional Facility (hereinafter "Wende"). He testified that since he was transferred from Auburn to Wende, there have been no other safety concerns. He testified that he was in PC about 3 weeks to a month at Auburn and his PC status did not travel with him to Wende.
Both parties rested, and Defendant moved to dismiss based upon Claimant's failure to meet a prima facie case of negligent supervision. The Court reserved decision on that motion.
Law applicable to the facts:
Negligent Supervision 
It is well settled that "[h]aving assumed physical custody of [incarcerated individuals], [*2]who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard [incarcerated individuals], even from attacks by fellow [incarcerated individuals]," (Sanchez v State of New York, 99 NY2d 247, 252 [2002]; see also Flaherty v State of New York, 296 NY 342 [1947]). This duty does not require "unremitting surveillance in all circumstances," nor does it cast the State in the role of an insurer of [incarcerated individuals], safety (Sanchez, 99 NY2d at 256). Rather, "defendant's duty is limited to providing reasonable care to protect [incarcerated individuals], from risks of harm that are reasonably foreseeable, i.e., those that defendant knew or should have known" (Vasquez v State of New York, 68 AD3d 1275, 1276 [3d Dept 2009]; see also Dickson v County of Putnam, 171 AD3d 1131 [2d Dept 2019]; Wassmann v County of Ulster, 144 AD3d 1470 [3d Dept 2016]; Anderson v State of New York, 125 AD3d 1273 [4th Dept 2015]; Di Donato v State of New York, 25 AD3d 944 [3d Dept 2006]). "The mere occurrence of an [incarcerated individual] assault, without credible evidence that the assault was reasonably foreseeable, cannot establish the negligence of the State" (Sanchez, 99 NY2d at 256; Williams v State of New York, 125 AD3d 1472, 1472 [4th Dept 2015], lv denied 25 NY3d 907 [2015]; Melvin v State of New York, 101 AD3d 1654 [4th Dept 2012]). 
As in any other negligence action, "the scope of the duty owed by the defendant is defined by the risk of harm reasonably to be perceived" (Sanchez v State of New York, supra; see Basso v Miller, 40 NY2d 233, 241 [1976]; Smith v County of Albany, 12 AD3d 912, 913 [3d Dept 2004]). Even though the "precise manner in which the harm occurred" may not have been foreseeable, liability attaches if it was "within the class of reasonably foreseeable hazards" to which the duty applies (Sanchez v State of New York, supra; Rodriguez v City of New York, 38 AD3d 349, 352 [1st Dept 2007]). Moreover, it applies to those risks that were foreseeable, "not simply by actual notice but by actual or constructive notice - by what the 'State knew or had reason to know' "(Sanchez v State of New York, supra at 255, quoting dissenting op at 260). 
As in the Sanchez case, this Court is "concerned in this negligent supervision case with what risk the State, operating a maximum-security prison and having custody of [incarcerated persons] forcibly surrounded by [incarcerated persons] many of them with a proven capacity for violenceshould reasonably have foreseen in the circumstances presented." (Sanchez v State of New York, supra at 256). 
Like other duties in tort, the scope of the State's duty to protect [incarcerated individuals] is limited to risks of harm that are reasonably foreseeable (Sanchez v State of New York, supra; see Villar v Howard, 28 NY3d 74, 80 [2016] [finding facility need not foresee specific harm]). "To carry the burden of proving a prima facie case, the [claimant] must generally show that the defendant's negligence was a substantial cause of the events which produced the injury" (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]). Claimant need not demonstrate that "the precise manner in which the accident happened, or the extent of injuries, was foreseeable" (id.; see Harris v State of New York, 117 AD2d 298, 303 [2d Dept 1986]). 
The State has been found negligent in incarcerated person on incarcerated person assault claims where a claimant was able to establish that the attack was foreseeable because: (1) Defendant knew, or should have known, that the claimant was at risk of assault, yet failed to provide reasonable protection; (2) Defendant knew, or should have known, that the assailant was prone to perpetrate an attack, yet failed to take proper precautionary measures; or (3) Defendant failed to intervene or act when it knew, or should have known, that surrounding conditions were likely to engender or facilitate an attack (Smart v State of New York, UID No. 2007-029-053 [Ct Cl, Mignano, J., Dec. 21, 2007], affd 65 AD3d 1218 [2d Dept 2009]; Douglas v State of New [*3]York, UID No. 2007-028-012 [Ct Cl, Sise, P.J., May 17, 2007]; Shearin v State of New York, UID No. 2007-028-011 [Ct Cl, Sise, P.J., May 8, 2007]). As this Court stated in Mercer v State of New York (Ct Cl, July 22, 1996 [Claim No. 90188], Corbett, J.), "[L]iability may be based either on defendant's failure to protect claimant from a known dangerous prisoner or to use adequate supervision to stop that which was foreseeable in an immediate or proximate sense, rather than in some generalized way" (see also Spadaro v State of New York, 38 Misc 2d 489 [1963], affd 28 AD2d 604 [1967]). 
Applying the foregoing to the credible testimony and documentary evidence presented, the Court finds that Claimant has met his burden, by a preponderance of the evidence, to establish a prima facie case of negligent supervision. Here, it is unrefuted that Southport and DOCCS were made aware, in writing, that Giodanni had been threatening Claimant with physical harm, and that Claimant specifically requested PC at Southport and whatever facility he was to be moved to on June 8, 2020. It is incomprehensible why Claimant would be transferred on the same day and to the same facility as Giodanni, and placed into the same bullpen without shackles when Southport and DOCCS both had actual notice of the safety concerns for Claimant. DOCCS failure to keep Claimant away from Giodanni at all times after actual written notice was given is a breach of duty by the Defendant.
Accordingly, the Court finds that Defendant is 100 percent liable for negligent supervision of Claimant. Though the Court finds that Defendant is liable, there can be no monetary award of damages as Claimant failed to prove his injuries by competent evidence. However, to the extent Claimant has paid a filing fee, it may be recovered pursuant to Court of Claims Act § 11-a (2).
All objections upon which the Court reserved determination during trial, and not otherwise addressed herein, are now overruled. All motions are denied as moot.
The Clerk of the Court is directed to enter judgment accordingly.
Dated: June 14, 2024
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims

Footnotes

Footnote 1:The Court of Claims is a court of limited jurisdiction insofar as its reach extends only to New York State and certain public authorities as defendants (see Court of Claims Act § 9; Kevin A. Reilly, Practice Commentaries, McKinney's Cons Laws of NY; NY Const Art VI, § 9). Accordingly, the caption is amended sua sponte to reflect the only proper defendant, the State of New York.

Footnote 2:The proceedings were held via Microsoft Teams in their entirety.