McDevitt v State of New York (2021 NY Slip Op 04795)





McDevitt v State of New York


2021 NY Slip Op 04795


Decided on August 26, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, NEMOYER, TROUTMAN, AND WINSLOW, JJ.


136.1 CA 19-00724

[*1]PETER BRENT MCDEVITT, CLAIMANT-APPELLANT,
v
STATE OF NEW YORK, DEFENDANT-RESPONDENT. (CLAIM NO. 122710.) 






E. STEWART JONES HACKER MURPHY LLC, TROY (JULIE ANN NOCIOLO OF COUNSEL), FOR CLAIMANT-APPELLANT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (BRIAN D. GINSBERG OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from a judgment of the Court of Claims (Renee Forgensi Minarik, J.), entered April 1, 2019. The judgment dismissed the claim after a trial. 
It is hereby ORDERED that the judgment so appealed from is reversed on the facts without costs, the claim is reinstated, judgment is granted in favor of claimant, and the matter is remitted to the Court of Claims for further proceedings in accordance with the following memorandum: While serving a prison term at Groveland Correctional Facility for a non-violent offense, claimant—who had an unblemished disciplinary record—cooperated with an investigation by the Department of Corrections and Community Supervision (DOCCS) into an illegal sexual relationship between a female correction officer (Parkinson) and several male inmates. Among the inmates involved in the illegal relationship was a gang leader inside the prison. During the course of the investigation, a state official left documents evidencing claimant's cooperation where an inmate porter could see them, and the porter shared that information with other inmates, including the gang leader implicated in the investigation. The gang leader then collaborated with other inmates to instigate a brutal assault on claimant. Prior to the attack, one of the inmates informed Parkinson of the plan.
Notably, Parkinson—the very officer implicated by the investigation with which claimant was assisting—was the only officer stationed in claimant's dormitory at the time of the attack. At no point did DOCCS or any other state official move claimant to protective custody, a different prison, or even a different housing pod. Nor did DOCCS or any other state official bar Parkinson from guarding or interacting with claimant, despite the fact that, by DOCCS's own admission, Parkinson had already retaliated against claimant by filing a baseless misbehavior report against him.
Claimant subsequently filed this claim, alleging as relevant here that defendant was negligent in failing to protect him from the attack. The Court of Claims tried the case and rendered judgment in defendant's favor. Claimant now appeals.
"Following a nonjury trial, the Appellate Division has 'authority . . . as broad as that of the trial court . . . and . . . may render the judgment it finds warranted by the facts' " (Sweetman v Suhr, 159 AD3d 1614, 1615 [4th Dept 2018], lv denied 31 NY3d 913 [2018], quoting Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; see Baba-Ali v State of New York, 19 NY3d 627, 640 [2012], citing Northern Westchester Professional Park Assoc., 60 NY2d at 499; Alexandra R. v Krone, 186 AD3d 981, 982 [4th Dept 2020], appeal dismissed 36 NY3d 933 [2020]; Upstate Forestry & Dev., LLC v McDonough Hardwoods Ltd., 178 AD3d 1412, 1412-1413 [4th Dept 2019]). In this case, judgment should have been rendered in favor of claimant, not defendant. We therefore reverse.
"Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates, even from attacks by fellow inmates . . . Like other duties in tort, the scope of the State's duty to protect inmates is limited to risks of harm that are reasonably foreseeable" (Sanchez v State of New York, 99 NY2d 247, 252-253 [2002]). Foreseeability is defined—with "words familiar to every first-year law student" (id. at 252)—in terms of both actual and constructive notice, i.e., anything the State was aware of or should have been aware of (see id. at 255). More specifically, constructive notice includes whatever information the State reasonably should have known from its knowledge of the risks to a class of inmates based on its institutional expertise, its prior experience, and its policies and practices (see id. at 254). Contrary to the dissent's insinuation, a risk of harm can be reasonably foreseeable even without a "specific threat" against a particular inmate; indeed, "[i]n Sanchez, . . . the Court of Appeals specifically rejected such a requirement" (Rodriguez v City of New York, 38 AD3d 349, 350 [1st Dept 2007] [internal quotation mark omitted]).
Here, the trial evidence proves decisively that defendant either knew or should have known that claimant was at serious risk of being attacked as a result of his cooperation. Specifically, defendant knew that claimant had just reported an illegal sexual relationship between Parkinson and an inmate gang leader, and defendant's failure to safeguard the investigatory file allowed that fact to spread through the inmate population. As defendant's own witnesses testified at trial, the risk to an inmate in claimant's position under these circumstances would have been obvious and well-known. Notwithstanding the reasonably foreseeable risk to claimant, defendant failed to take any steps to protect him. In short, given Parkinson's prior retaliation, the gang leader's influence, motive, and ability to instigate an attack, and defendant's failure to safeguard the facility's investigatory file, we conclude that defendant's decision to simply leave claimant in his dormitory, surrounded by associates of the gang leader and guarded only by Parkinson, constituted a grave breach of its duty to use "reasonable care under the circumstances" to protect an inmate in its custody (Sanchez, 99 NY2d at 254).
Contrary to defendant's contention, the intentional conduct of Parkinson and the other inmates in instigating claimant's beating does not excuse or supersede defendant's own independent negligent acts, i.e., its failure to take any steps to protect claimant from that reasonably foreseeable beating (see Hain v Jamison, 28 NY3d 524, 528-530 [2016]). Rather, defendant's own negligent acts were—at a minimum—a co-equal proximate cause of claimant's injuries. Indeed, claimant's assault was occasioned by the confluence of the negligent acts of defendant and the intentional conduct of Parkinson and the other inmates. Parenthetically, although the dissent faults us for classifying Parkinson's conduct as "intentional," the dissent overlooks the fact that defendant—in an effort to avoid respondeat superior liability—has consistently characterized Parkinson's conduct in this case as intentional.
Contrary to defendant's further contention and the view of our dissenting colleagues, the fact that claimant himself did not seek protective measures and even expressed a willingness to return to his dormitory does not circumscribe defendant's nondelegable duty to protect him under these circumstances. For one thing, when claimant agreed to return to his dormitory, he was unaware that the investigatory file had been compromised. In any event, and more importantly, an inmate's own braggadocio about his or her safety at a state prison simply cannot be the barometer of defendant's duty to protect him or her while confined. Defendant's duty to safeguard an inmate must be evaluated by reference to what a reasonable person in DOCCS's position would foresee about the danger to that inmate, not what the inmate—for whatever reason—believes or claims to believe about his or her own safety (see generally Sanchez, 99 NY2d at 252-255).
Nor did defendant satisfy its duty to claimant simply by transferring the inmates implicated in the investigation. By defendant's own characterization, DOCCS transferred those specific inmates because they were deemed to be victims of statutory sodomy, not because they might retaliate against claimant. Moreover, in light of the gang leader's well-known status at Groveland, simply removing the particular inmates implicated in the investigation was inadequate to protect claimant from the reasonably foreseeable retaliatory assault that ultimately occurred, especially given defendant's incomprehensible decision to station Parkinson—who DOCCS knew had already retaliated against claimant by filing a false misbehavior report—as the only officer in the dormitory. Finally, and contrary to the dissent's view, claimant's purported [*2]discussion of the investigation with other inmates presents, at most, an issue of comparative negligence that does not preclude liability on defendant's part (see Brown v State of New York, 31 NY3d 514, 518-520 [2018]; Smith v State of New York, 180 AD3d 1270, 1271 [3d Dept 2020]).
In light of the foregoing, we reverse the judgment, reinstate the claim, grant judgment in claimant's favor, and remit the matter to the Court of Claims to fix damages based on the proof already taken at trial.
All concur except Peradotto, J.P., and Carni, J., who dissent and vote to affirm in the following memorandum: We respectfully dissent. As an initial matter, although "this Court has the authority to independently consider the weight of the evidence on an appeal in a nonjury case, deference is still afforded to the findings of the [court] where, as here, they are based largely on credibility determinations" (Williams v State of New York, 187 AD3d 1522, 1522 [4th Dept 2020], lv denied 36 NY3d 909 [2021] [internal quotation marks omitted]). Thus, "[o]n a bench trial, the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (id. [internal quotation marks omitted]; see Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992], rearg denied 81 NY2d 835 [1993]; Howard v Pooler, 184 AD3d 1160, 1163 [4th Dept 2020]).
Here, the record reflects that, after claimant spoke to investigators about the incident he witnessed and before the assault took place, inmates who were involved in the illegal sexual relationship with the correction officer (Parkinson) were removed from claimant's dormitory; no specific threat had been made against claimant; claimant himself told investigators that he was not concerned with returning to his dormitory after speaking with them; and claimant did not request protective custody. Indeed, the testimony as credited by the Court of Claims established that claimant himself told other inmates that he had spoken to investigators, further reflecting an absence of fear on his part. In our view, these circumstances present a "fair interpretation of the evidence" supporting the conclusion that defendant was not negligent in failing to prevent what claimant asserts was a foreseeable assault (Williams, 187 AD3d at 1522).
In reaching the contrary conclusion, although the majority relies, in part, on the "intentional conduct of Parkinson and the other inmates," claimant on appeal contends that Parkinson acted negligently, not intentionally, and thus the majority's characterization of Parkinson's conduct as "intentional" addresses an argument that the appellant has not raised and in fact explicitly refutes. Additionally, while the majority writes that defendant's investigation had been "compromised," this again ignores the court's factual finding that claimant himself "directly told other inmates in the dormitory that he had spoken to the investigator" and that "to the extent that the inmates [in claimant's] dormitory did learn of the purpose of Claimant's interview, it appears more likely than not that it was because Claimant freely told them about it." Not only must we, as discussed above, generally accord a degree of deference to the court's view of the evidence on this issue (see id.), we are also, on this particular appeal, unable to refute it. In support of its conclusion, the court cited in its decision claimant's testimony at page 329 of the original trial transcript. Claimant has not, however, submitted that page of the transcript as part of the appellate record and has not raised any contention on appeal disputing the particular finding of the court that claimant himself alerted other inmates to his discussions with investigators.
Based on the court's factual findings below, the record before us, and the applicable standard of review, we would therefore affirm.
Entered: August 26, 2021
Mark W. Bennett
Clerk of the Court