R.S. v State of New York (2024 NY Slip Op 05253)

R.S. v State of New York

2024 NY Slip Op 05253

Decided on October 24, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 24, 2024

CV-23-0142
[*1]R.S., Appellant, et al., Claimant,
v
State of New York, Respondent.

Calendar Date:September 5, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Held & Hines, LLP, Brooklyn (Philip M. Hines of counsel), for appellant.
Letitia James, Attorney General, Albany (Sean P. Mix of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Court of Claims (W. Brooks DeBow, J.), entered January 10, 2023, upon a decision of the court in favor of defendant.
In 2014, claimant R.S. (hereinafter claimant), while incarcerated at Clinton Correctional Facility, was sexually assaulted in her dormitory cube by another incarcerated individual. As a result, claimant brought this claim to recover damages asserting, among other things, that defendant was negligent and failed to provide adequate protection and supervision. Following a bench trial on the issue of liability, the Court of Claims made several findings of fact including, as relevant here, that claimant was sexually assaulted in her dormitory cube and that the correction officer (hereinafter CO) assigned to the area was asleep while the assault took place. Nonetheless, the court concluded that claimant had failed to prove that the assault was reasonably foreseeable and dismissed the claim. Claimant appeals.
Claimant contends that the Court of Claims erred in determining that the sexual assault was not reasonably foreseeable. It is well settled that "[h]aving assumed physical custody of [incarcerated individuals], who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard [incarcerated individuals], even from attacks by fellow [incarcerated individuals]. . . . Like other duties in tort, the scope of the State's duty to protect [incarcerated individuals] is limited to risks of harm that are reasonably foreseeable" (Sanchez v State of New York, 99 NY2d 247, 252-253 [2002] [citations omitted]). "Foreseeability is defined . . . in terms of both actual and constructive notice, i.e., anything the State was aware of or should have been aware of" (McDevitt v State of New York, 197 AD3d 852, 854 [4th Dept 2021] [citation omitted]; see Campbell v State of New York, 186 AD3d 1849, 1850 [3d Dept 2020]). "More specifically, constructive notice includes whatever information the State reasonably should have known from its knowledge of the risks to a class of [incarcerated individuals] based on its institutional expertise, its prior experience, and its policies and practices" (McDevitt v State of New York, 197 AD3d at 854 [citation omitted]).
At the time of the assault, claimant was housed in a general population dormitory consisting of a communal sleeping area made up of cubes, separated by four-foot-high wall dividers. There are no doors per se, and no incarcerated individual is "locked in" a particular cube. Rather, they all have unfettered access to the sleeping areas of all incarcerated individuals residing in that dormitory. The unit is supervised by one CO, whose station is located immediately outside the dormitory area. In response to her general safety fears, claimant was placed in the cube closest to the CO's station, which was approximately 10 feet from this station, where she could be directly observed by the CO. Testimony established that, in DOCCS [*2]dormitories at the time of claimant's assault, DOCCS would reserve the cubes closest to the CO's stations for individuals who were at risk of sexual assault; they were informally called "PREA cubes."[FN1] Claimant was assaulted when another resident of the dormitory exited his cube, crawled into her cube — i.e., the PREA cube — held an object to her throat and demanded she perform oral sex.
First and foremost, the Court of Claims found that at the time of the assault, the CO assigned to protect claimant was asleep, and as such definitionally precluded from performing his duties. The record further shows that defendant was aware that claimant was in a class of individuals susceptible to the specific risk of sexual assault as claimant testified, without contradiction, that she was deemed a "high-risk security level . . . transgender [incarcerated individual]" by DOCCS when she filled out the "sexual assault risk screening form," which classification she stated she had maintained from 2009 to the date of the assault. Claimant also testified that a person who scores high enough on the "PREA form" is designated a "PREA [incarcerated individual]," i.e., "a vulnerable [incarcerated individual]."
"In reviewing a nonjury verdict on appeal, this Court has broad authority to independently evaluate the evidence and render a judgment warranted by the facts, with due deference to the trial court's credibility assessments" (Barber v Crout-Woodard, 224 AD3d 966, 968 [3d Dept 2024] [internal quotation marks and citations omitted]; see Feeney v State of New York, 222 AD3d 1235, 1237 [3d Dept 2023]). As the court in Sanchez found, the question is not what the State actually knows, but what it should have known, i.e., whether defendant has constructive notice (see Sanchez v State of New York, 99 NY2d at 254). There was a preponderance of evidence that defendant was aware that this claimant was at risk of sexual assault because defendant's own sexual victimization risk screening procedures, and placement in the 10-1 dorm's PREA cube as a result of her complaints about harassment immediately before the sexual assault, identified her as being in a class of individuals vulnerable to the risk of sexual assault (cf. Gordon v City of New York, 70 NY2d 839, 840 [1987]). Moreover, placement in the PREA cube generally, and in this case specifically, is a tacit acknowledgement that individuals who are identified as vulnerable and live in a general population dormitory consisting of a communal sleeping area, must have more protection at night. A sleeping CO negates this added protection at this critical time. Thus, it was not necessary for defendant to have notice that COs generally, or this CO specifically, slept during shifts. It is not unreasonable to expect that COs are conscious, alert and attentive while on duty monitoring an open-floor-plan dormitory of incarcerated individuals in a maximum-security prison.
It is well settled that, because "[c]orrection officers are tasked [*3]with the formidable and critical responsibility of protecting the safety of [incarcerated individuals,] . . . [w]hen that obligation is breached, the State may be directly liable for injuries suffered by an [incarcerated individual] if it acted negligently . . . or vicariously liable if a culpable employee . . . negligently caused the injuries while acting in the scope of employment" (Rivera v State of New York, 34 NY3d 383, 385 [2019]). Here, the slumbering CO breached this critical duty to protect claimant's safety. While it is well established that defendant is not required to provide "unremitting surveillance in all circumstances" (Sanchez v State of New York, 99 NY2d at 256), a sleeping CO does not provide any surveillance. Furthermore, although defendant is not an insurer of an incarcerated individual's safety (see id. at 253),at a minimum, it is reasonable to expect that in the course of their employment correction officers will be sentient in order to protect those who are vulnerable to sexual victimization. Here, defendant's utter absence of surveillance allowed the assault to take place, thus rendering it liable (see McDevitt v State of New York, 197 AD3d at 854; Pitts v State of New York, 166 AD3d 1505, 1506 [4th Dept 2018], lv denied 35 NY3d 910 [2020]; cf. Vasquez v State of New York, 68 AD3d 1275, 1276 [3d Dept 2009]). Accordingly, judgment should have been rendered in favor of claimant, and we remit for the Court of Claims to assess damages (see McDevitt v State of New York, 197 AD3d at 853).
Clark, J.P., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, with costs, claim reinstated and judgment granted in claimant R.S.'s favor, and matter remitted to the Court of Claims to assess damages.

Footnotes

Footnote 1: PREA is the federal Prison Rape Elimination Act (see 34 USC § 30301-30309).